ROGER S. DUNHAM *v.* CARL M. DUNHAM, JR.
(12687)
(12754)

PETERS, C. J., HEALEY, CALLAHAN, SPALLONE AND SPEAR, JS.

---

Argued May 5—decision released July 7, 1987

*Steven I. Traub,* with whom, on the brief, was *Steven J. Errante,* for the appellant in the first case and appellee-appellant in the second case (plaintiff).

*Wesley W. Horton,* with whom were *Norman J. Voog* and, on the brief, *William R. Moller,* for the appellee in the first case and appellant-appellee in the second case (defendant).

PETERS, C. J. These appeals involve a number of claims regarding the propriety of the trial court's rulings in litigation between two brothers concerning the validity of probate proceedings and inter vivos transfers of family property. The plaintiff, Roger S. Dunham, brought an action in three counts against his brother, Carl M. Dunham, Jr., seeking to set aside the decree admitting into probate the will of their mother, Jessica Dunham, asking for specific performance of an alleged promise to convey real estate and claiming compensatory, punitive and exemplary damages. During a trial to a jury, the trial court directed a verdict in favor of the defendant on the second and third counts. The jury returned a verdict in favor of the plaintiff on the first count. Both parties have appealed from the trial court's judgments rendered in accordance with these verdicts. We find no error.

The jury could reasonably have found the following facts. Carl Dunham, Sr., and Jessica Dunham were husband and wife. They had three children, Joan, Carl, Jr., and Roger, the latter two being the parties to these appeals.

During his lifetime, Carl Dunham, Sr., had amassed extensive real estate holdings, totaling approximately 900 acres, located in New Milford, Sherman and Sharon. He had constructed on that property the family residence, an inn and a licensed airport (the airport). Upon the death of Carl Dunham, Sr., in 1969, his will

left to his widow Jessica an outright one half interest in his estate and a trust interest, subject to her testamentary power of appointment, in the other one half of his estate.

In 1974, Jessica Dunham conveyed to the defendant 300 acres of the property she had inherited from the estate of her late husband.[1] The defendant, a member of the bar of this state, acting as Jessica Dunham's lawyer, prepared all of the documentation in connection with the transaction. That conveyance included the family residence, the inn, the airport, and the office building in which the defendant conducted his law practice.

In 1978, Jessica Dunham executed, in the defendant's law office, a will that he had drafted for her. This will left her net residuary estate after taxes, approximately $30,000, to be divided equally among her three children. It also appointed the defendant the executor of her estate, forgave and cancelled all indebtedness of the defendant to Jessica Dunham, and exercised in favor of the defendant the power of appointment created by the will of Carl Dunham, Sr., thereby ensuring that the defendant would inherit the remaining 600 acres of property that Jessica Dunham had received under Carl Dunham, Sr.'s will.[2] At the same time she executed the

---

[1] For purposes of this appeal, the relevant terms of the transaction are as follows. The ostensible consideration for the conveyance was approximately $358,000. The defendant, however, paid no money to Jessica Dunham for the property. Instead, he assumed certain mortgages totaling about $52,000 and another $50,000 in unsecured debts owed by her. In connection with that transaction, the defendant also gave her a promissory note for $256,627.75, but the defendant never paid any money on that note.

[2] Jessica Dunham sent a letter, dated August 24, 1978, to the plaintiff concerning the disposition of the Dunham property. She stated in the letter that she was conveying all of the property to the defendant, who would manage it, "in order to have one person in charge." She also expressed her conviction that the defendant would "be fair" and that her three children would work out any differences of opinion that might arise as a result of this arrangement.

will, Jessica Dunham also executed a power of attorney, prepared by the defendant, which gave him complete control over her assets and affairs during her lifetime.

Jessica Dunham died of cancer on October 23, 1978. On October 31, 1978, the defendant asked the plaintiff to come to his office to discuss the administration of their mother's estate. During that meeting, the defendant asked the plaintiff to sign several documents to facilitate the administration of the estate. The plaintiff, in turn, expressed interest in acquiring title to the airport, which originally had been part of Carl Dunham, Sr.'s estate. He expected to inherit that property because the operation of the airport had been his domain and, on the basis of conversations he had had with his mother, he had understood that property to be part of his inheritance from her estate. The defendant replied that they would "have to start thinking about" arrangements for the transfer of the airport property. The parties had several similar discussions about the airport property on subsequent occasions. At no time during those discussions, however, did the defendant disclose that, as of 1974, he himself held title to the airport, and that under the terms of Jessica Dunham's will, he had acquired absolute fee simple title to the remainder of the property in their mother's estate.

Following this conversation at the defendant's office, the parties went to the New Milford town hall, where the plaintiff executed, in the presence of the probate clerk and the probate judge, a waiver of notice and objection to the admission to probate of Jessica Dunham's will. According to the plaintiff, although the defendant never explained the significance of the waiver, he signed it anyway, believing that the defendant was acting as his attorney and in his best interests.

The validity of this waiver is the subject of dispute in the first count of the plaintiff's complaint.

In January, 1981, Jessica Dunham's estate was closed. Subsequently, in May, 1982, the defendant requested that the plaintiff leave the family residence, where he had been living since February, 1979. To date, the defendant has not conveyed to the plaintiff any of the property he received from the parties' mother in 1974, or subsequently from her estate.

The plaintiff initiated this action in 1982, by filing in the Superior Court an amended complaint in three counts. As subsequently amended, the first count, an equitable action to set aside the probate decree, alleged that the defendant had exercised undue influence over Jessica Dunham in preparing and securing the execution of her will. It further alleged that, in reliance upon the advice and promises of the defendant, the plaintiff had signed a waiver relinquishing his right to contest the admission of that will to probate. The second count, sounding in contract, alleged that the defendant had represented to the plaintiff that the plaintiff's share in the equitable distribution of Jessica Dunham's estate included the airport, and further alleged that the plaintiff had fully performed in accordance with an oral agreement between the parties concerning the equitable distribution of the property in their mother's estate. The third count, which the trial court construed as asserting a claim for legal malpractice, alleged that the defendant, while acting as the plaintiff's attorney, had engaged in various acts of professional misconduct, thereby causing harm to the plaintiff.

During the trial to a jury, after the plaintiff had rested, the defendant filed a motion for directed verdict on all three counts. After a hearing, the trial court granted the motion in part, directing a verdict for the defendant on the second and third counts for lack of

sufficient evidence. The court treated those counts, respectively, as claims for breach of contract and legal malpractice. At the conclusion of the trial, the court submitted the first count to the jury, which rendered a verdict, by way of answers to three interrogatories,[3]

---

[3] The court submitted to the jury the following interrogatories:
"As to First Count:

1. Was the waiver of the admission of Jessica Scott Dunham's will obtained by the defendant as a result of:

a. A fraud upon the plaintiff based upon a promise, etc.

Yes _____ No _____

OR b. A breach by the defendant of a confidential or fiduciary relationship between plaintiff and defendant.

Yes _____ No _____

2. If the waiver was so obtained did the plaintiff have a meritorious claim of undue influence that would more probably than not have prevented the will from being probated.

Yes _____ No _____

3. Having obtained all the facts surrounding the admission of the will and the execution of the will, was the plaintiff guilty of latches—in other words was it his fault that he delayed so long as to prejudice the defendant's case.

Yes _____ No _____

/s/ Daniel Mencuccini
Foreperson"

The jury responded as follows:

"December 19, 1984

DEFENDANT'S VERDICT

In this case the Jury finds the issues for the defendant Carl M. Dunham, Jr., as against the plaintiff Roger S. Dunham on Count two and Count three.

/s/ Daniel Mencuccini
Foreperson"

The jury at the same time returned its answers to the interrogatories as follows:

"December 19, 1984

Interrogatory No. 1a.
Interrogatory No. 1b.    Yes
Interrogatory No. 2.     Yes
Interrogatory No. 3.     No

/s/ Daniel Mencuccini
Foreperson"

in favor of the plaintiff, finding the defendant guilty of breach of a fiduciary or confidential relationship with the plaintiff. Accordingly, the trial court rendered judgment for the plaintiff on the first count, setting aside the decree admitting to probate the will of Jessica Dunham, and for the defendant on the second and third counts. The defendant thereafter filed posttrial motions to set aside the verdict on the first count and to render judgment in accordance with the defendant's motion for a directed verdict on that count, both of which were denied by the trial court.

On appeal to this court, the plaintiff claims that the trial court erred: (1) in directing a verdict in favor of the defendant on the second count, rather than submitting that count to the jury, because there was sufficient evidence of a promise by the defendant to convey the airport to the plaintiff to give rise to an enforceable contract; and (2) in directing a verdict in favor of the defendant on the third count, which, according to the plaintiff, was a dual claim for breach of fiduciary duty and for tortious interference with an expectancy or inheritance, and was supported by sufficient evidence to warrant its submission to the jury. In the defendant's appeal from the judgment on the first count, he essentially claims that the trial court erred in its charge to the jury and in certain evidentiary rulings it made. We will first address the plaintiff's appeal and will then consider the defendant's appeal.[4]

I

In our consideration of the plaintiff's appeal we note, as a threshold matter, that under the circumstances of this case, our review is limited by virtue of the plaintiff's failure, at trial, to file a motion to set aside the jury verdict on the second and third counts of his complaint. See Practice Book § 320 and General Statutes

---

[4] The plaintiff did not pursue the issues he raised in cross appeal.

§ 52-228b.[5] We have stated repeatedly that such a motion is indispensable to ensure full appellate review of claims of error in civil jury cases. *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 195, 520 A.2d 208 (1987); *Kolich* v. *Shugrue,* 198 Conn. 322, 325, 502 A.2d 918 (1986); *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 515, 441 A.2d 163 (1981); *Gordon* v. *Feldman,* 164 Conn. 554, 557, 325 A.2d 247 (1973). We insist upon this procedure for sound policy reasons, as it provides the trial court with an opportunity to correct any errors and to explain the basis for its rulings, thereby enhancing the appellate record, and implements our longstanding policy against review of questions not distinctly raised at trial. Practice Book § 4185; *Pietrorazio* v. *Santopietro,* supra, 514–15. In the absence of a motion to set aside the verdict, we consider the plaintiff's claims under the plain error doctrine, which provides that the Supreme and Appellate Courts "may in the

---

[5] "[Practice Book] Sec. 320. MOTIONS IN ARREST OF JUDGMENT, TO SET ASIDE VERDICT OR FOR NEW TRIAL

"Motions in arrest of judgment, whether for extrinsic causes or causes apparent on the record, motions to set aside a verdict and motions for new trials, unless brought by petition served on the adverse party or parties, must be filed with the clerk within five days after the day the verdict is accepted or judgment rendered, exclusive of such days as the clerk's office is not required to be open for at least two hours; provided that for good cause the court may extend this time. The clerk shall notify the trial judge of such filing. Such motions shall state the specific grounds upon which counsel relies."

"[General Statutes] Sec. 52-228b. SETTING ASIDE OF VERDICT IN ACTION CLAIMING MONEY DAMAGES. No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

interests of justice notice plain error not brought to the attention of the trial court." Practice Book § 4185; *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 243, 520 A.2d 1008 (1987); *Finley* v. *Aetna Life & Casualty Co.,* supra; *Pietrorazio* v. *Santopietro,* supra, 515–16.

## A

In his first claim of error, the plaintiff challenges the ruling by the trial court directing a verdict on the second count of his complaint, the claim for breach of contract. This claim concerned the plaintiff's alleged rights in the airport property that his father had acquired and had willed to his mother, and that his mother had subsequently deeded, by inter vivos transfer, to the defendant. The plaintiff maintains that the court erred in finding insufficient evidence of a contract to submit this count to the jury.[6]

The court stated orally, on the record, three distinct bases for directing a verdict on this count: (1) the defendant's alleged representations to the plaintiff concerning the conveyance of the airport land were not sufficiently definite to constitute a contract; (2) the boundaries of the airport land had not been adequately specified so as to allow enforcement of the alleged promise by the defendant to convey that land to the plaintiff; and (3) the plaintiff's acts of part performance were insufficient to negate the requirement that the alleged contract between the parties satisfy the statute of frauds. Despite the plaintiff's attack on each

---

[6] In his main brief to this court, the plaintiff characterizes count two as a claim for breach of contract and for fraudulent misrepresentation. Because the plaintiff never pursued the latter claim during the trial, he is foreclosed from pursuing it on appeal. *Fuessenich* v. *DiNardo,* 195 Conn. 144, 151, 487 A.2d 514 (1985); *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 120, 132 n.8, 464 A.2d 6 (1983); *Machiz* v. *Homer Harmon, Inc.,* 146 Conn. 523, 525, 152 A.2d 629 (1959); W. Maltbie, Connecticut Appellate Procedure § 42.

of these findings, we are not persuaded that this claim of error merits the exercise of our discretionary authority under the plain error doctrine.

According to the trial court, the plaintiff failed to prove that the defendant had made a definite promise to convey the airport property to him. "Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements." *Augeri* v. *C. F. Wooding Co.*, 173 Conn. 426, 429–30, 378 A.2d 538 (1977); A. Corbin, Contracts (1963) § 95; 1 Restatement (Second), Contracts (1981) § 33; see also *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 215, 520 A.2d 217 (1987). The contract was created, according to the plaintiff, when the defendant, on October 31, 1978, requested that the plaintiff sign the waiver of notice of hearing on the admission to probate of their mother's will. He argues that the defendant's statements, both on that occasion and during subsequent conversations, that he would "take care" of the plaintiff with respect to the airport property, constitute an enforceable promise to convey that property to the plaintiff. The defendant, however, made no affirmative statement, either on October 31 or subsequently, that could reasonably be construed as a promise to convey the property. Although the parties apparently had several discussions about the airport, we agree with the trial court that the vague statements allegedly made by the defendant, in particular his remark to the plaintiff that "the airport is basically your area of expertise. Don't worry about it," did not give rise to an enforceable contract.

The second evidentiary shortcoming in the plaintiff's claim for breach of contract was the failure to describe the boundaries of the airport property with sufficient specificity. See *Montanaro Bros. Builders, Inc.* v. *Snow*, 190 Conn. 481, 486, 460 A.2d 1297 (1983); *Pigeon* v. *Hatheway*, 156 Conn. 175, 182, 239 A.2d 523 (1968);

A. Corbin, supra, § 100; 1 Restatement (Second), Contracts (1981) § 33. The only evidence presented as to the boundaries of that property was a sketchy, imprecise verbal description by the plaintiff of his own conception of its boundaries, along with somewhat unclear testimony, on behalf of the plaintiff, by a real estate appraiser who submitted an appraisal of the property. The plaintiff now seeks to bolster that testimony by pointing to conversations about the property he had had with the defendant prior to the initiation of this action as evidence that both parties were fully aware of its boundaries. In our view, however, the trial court could reasonably have concluded that the proffered testimony did not furnish the specific information required to ascertain the precise boundaries of that property.

Finally, the trial court found that the alleged agreement between the parties failed to satisfy the requirements of the statute of frauds, which provides in part that "[n]o civil action may be maintained in the following cases unless the agreement . . . is made in writing and signed by the party, or the agent of the party, to be charged . . . upon any agreement that is not to be performed within one year from the making thereof." General Statutes § 52-550. The plaintiff seeks to avoid compliance with the statute of frauds, as he did at trial, by relying on a theory of part performance, under which "acts on the part of [a] promisee may be sufficient to take a contract out of the statute" of frauds. *Ubysz* v. *DiPietro,* 185 Conn. 47, 54, 440 A.2d 830 (1981). In support of that theory, the plaintiff asserts that he invested substantial funds and many hours of his labor making capital improvements on the airport property, anticipating that he would ultimately take title to the property. The doctrine of part performance requires, however, as an essential element, conduct that is "referable to and consistent with [an] oral agreement [between the parties]." *Andrews* v. *New*

*Britain National Bank,* 113 Conn. 467, 474, 155 A. 838 (1931); *Montanaro Bros. Builders, Inc.* v. *Snow,* supra, 487; *Ubysz* v. *DiPietro,* supra; *H. Pearce Real Estate Co.* v. *Kaiser,* 176 Conn. 442, 443, 408 A.2d 230 (1979). Without such an agreement, there is no basis for finding that "the party seeking enforcement, in reasonable reliance *on the contract* and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement." (Emphasis added.) 1 Restatement (Second), Contracts (1981) § 129; *Montanaro Bros. Builders, Inc.* v. *Snow,* supra. The plaintiff's position, therefore, is undermined by the trial court's finding that there was no underlying agreement between the parties, a finding which is supported by the record. Furthermore, even assuming that the trial court had determined that the parties had had an agreement, the plaintiff could not prevail because the court also found that the acts undertaken by the plaintiff prior to the initiation of this action were not sufficiently substantial to satisfy the part performance exception to the statute of frauds. See *Breen* v. *Phelps,* 186 Conn. 86, 95, 439 A.2d 1066 (1982). We therefore conclude that the trial court did not commit plain error in directing a verdict for the defendant on the second count.

### B

The plaintiff's second claim of error is that the trial court erred in directing a verdict, for lack of sufficient evidence, on the third count, which the court treated as a claim for legal malpractice based upon intentional tortious acts. The plaintiff's argument has two components: (1) the court mischaracterized the underlying claim in the third count, which was not a claim for legal malpractice, but rather contained two distinct claims, one for breach of fiduciary duty, and the other for tortious interference with an expectancy or inheritance; and (2) the plaintiff presented sufficient evidence in sup-

port of the latter two claims to justify submitting that count to the jury. Because we are unpersuaded by the first component of the plaintiff's argument, we need not reach the second.

Looking both to the plaintiff's pleadings and to certain representations made by his counsel at trial, the trial court interpreted the third count as a claim for legal malpractice.[7] The plaintiff challenges this ruling as completely unfounded because nowhere in his pleadings did he label the cause of action in the third count as a claim for "legal malpractice."

We acknowledge, as did the trial court, that the pleadings do not state clearly the precise nature of the plaintiff's claim in the third count. A fair interpretation of the record and the trial transcript indicates, however, that the plaintiff, during the first twelve weeks of trial, presented the third count as a claim for legal malpractice. Moreover, the trial court could reasonably have interpreted the pleadings to assert such a claim.[8]

[7] The third count of the plaintiff's amended complaint provides in relevant part: "(22) As a result of the wrongful conduct of the defendant, while a Commissioner of the Superior Court, and while acting as attorney for the late Jessica Dunham, the estate of the late Jessica Dunham, and the plaintiff, all at the same time, the plaintiff has been grievously harmed and damaged in the following respects . . . . f. The wrongful conduct of the defendant has subjected the plaintiff to great delay and monetary expense in bringing and maintaining the present action, all of which would have been unnecessary had the defendant not violated the mandatory standards of professional conduct pertaining to attorneys."

[8] At the hearing on the defendant's motion for a directed verdict, the trial court engaged in a lengthy colloquy with the parties in an effort to determine the nature of the cause of action underlying the third count of the plaintiff's complaint. The court noted that, throughout the trial, the plaintiff had been pursuing a claim for legal malpractice based upon intentional tortious acts. Significantly, as late as the thirtieth day of trial, the plaintiff's counsel had indicated to the court that the plaintiff was asserting a claim for legal malpractice: "I think we misunderstand each other or where we differ is in whether or not we are talking about a law that has to be violated when the testimony in any malpractice case is what is the conduct and whether the conduct as understood in the legal commu-

*Fuessenich* v. *DiNardo,* 195 Conn. 144, 151, 487 A.2d 514 (1985); *Valley* v. *Fazzina,* 187 Conn. 423, 428, 446 A.2d 1068 (1982).

Having characterized the third count as a legal malpractice action, the court further determined that there was insufficient evidence to support such a claim, in two respects. The court noted that the plaintiff had failed to present the necessary expert testimony to inform the jury either about the applicable standard of professional skill or care or about the conformity of the defendant's conduct to that standard of professional behavior.[9] *Shelnitz* v. *Greenberg,* 200 Conn. 58, 66, 509 A.2d 1023 (1986); *Fitzmaurice* v. *Flynn,* 167 Conn. 609, 617, 356 A.2d 887 (1975). We agree.

As we concluded with respect to the second count, we do not perceive any manifest injustice in the court's ruling directing a verdict on the third count. The plain-

nity or medical community for a malpractice case, whether that was deviated from." The court also determined, upon extensive scrutiny of the pleadings and the evidence that had been presented, that the evidence failed to support a claim for legal malpractice.

The court further observed, at the hearing, that in fact the third count did not assert a claim for legal malpractice, but rather contained two distinct claims, one for breach of a fiduciary relationship and another for tortious interference with an inheritance or an expectancy. It then advised the plaintiff that those two claims had been improperly joined in one count. The plaintiff immediately moved to amend his pleadings to sever and clarify these two claims. After initially granting that motion, the court subsequently reversed itself, concluding that under the circumstances of the case, the plaintiff's amendment of the pleadings at that late date would have unduly prejudiced the defendant. The trial court did not abuse its discretion in denying the plaintiff's motion to amend his pleadings. *Preisner* v. *Aetna Casualty & Surety Co.,* 203 Conn. 407, 419–20, 525 A.2d 83 (1987); *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 303, 460 A.2d 488 (1983); *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980).

[9] The plaintiff did seek to introduce expert testimony by an attorney regarding the appropriate standard of professional care, but the trial court sustained, on an unrelated ground, an objection to that testimony by the defendant. The plaintiff has not challenged this ruling on appeal.

tiff therefore cannot prevail in his claim of error on any of the grounds raised in his appeal from the judgment of the trial court.

## II

In his appeal, the defendant attacks on numerous grounds the judgment of the trial court in favor of the plaintiff on the first count, a judgment rendered in accordance with the jury's answers to three interrogatories. The crux of that count is the allegation that, on October 31, 1978, the defendant obtained from the plaintiff, by reason of fraud or by the defendant's breach of a fiduciary or confidential relationship with the plaintiff, a waiver relinquishing the plaintiff's right to contest, in Probate Court, the validity of Jessica Dunham's will. The first count further alleges that by signing that waiver, on the advice of the defendant and without full knowledge of its significance, the plaintiff lost not only his right to challenge the validity of the will but also to claim benefits under the will.

The defendant has proffered three principal lines of argument, which essentially challenge the trial court's charge to the jury, the sufficiency of the evidence in support of the plaintiff's claims and certain evidentiary rulings by the court. We find no error.

## A

The defendant first objects to the trial court's instructions that the jury, on the basis of the evidence before it, could find a fiduciary or confidential relationship between the parties. In describing the application of the law of fiduciary relationships to the facts of this case, the court charged the jury that it could determine that such a relationship existed if it found that the parties had an attorney-client relationship.[10] The court fur-

[10] The trial court instructed the jury: "You heard the plaintiff testify that the defendant represented the plaintiff in his accident case and the purchase of his property—that's the five acres—that he sought the defend-

ther charged that, even in the absence of sufficient evidence to support a finding of an attorney-client relationship, there might be sufficient evidence to find that another type of fiduciary or confidential relationship existed.[11] The defendant excepted to these instructions at trial on the ground that there was insufficient evidence from which the jury could have concluded that the parties had an attorney-client relationship, or any other type of fiduciary relationship, at the time the plaintiff signed the waiver. We are unpersuaded by the defendant's claim.

ant's advice in several matters and always considered him his attorney. You have heard the defendant testify that, on the other hand, that other than in the accident case, he never represented the plaintiff. He testified he represented only himself in the sale of the property to the plaintiff. He testified that he never acted as the plaintiff's counsel in any matter other than the accident case in the period 1969 to 1975. . . . If you believe the plaintiff, you may find there was an attorney-client relationship on October 31, 1978. . . . If there was an attorney-client relationship, there would be a fiduciary relationship."

[11] The trial court further instructed the jury: "Now, what gives rise to a confidential relationship? It is a situation where there is a justifiable trust confided on the one side and a resulting superiority and influence on the other. In this case, we have a brother—a younger brother—who has testified. And, again, I'm saying this is my recollection, of the testimony. And, again, it's going to be your recollection which prevails. [The plaintiff] testified he consulted his older brother frequently. He relied on him as a brother and advisor; and as a lawyer. And this older brother, who was a lawyer and was better versed in the management and operation of the family estate.

"Now, what gives rise to a fiduciary relationship? An attorney-client relationship so gives rise. Also, in probate, an executor-heir or administrator-heir relationship gives rise to a fiduciary relationship.

"Now, you have the questions of fact as to whether or not there was such a relationship in this case because of the father's estate, which was still open in October of 1978 in which the brothers were contingent beneficiaries and also Jessica Dunham's estate in which Carl was executor and Roger was an heir. Even if he wasn't sharing in the property, he was an heir. The jury may consider these facts and all the other evidence addressed in this case. If based upon these facts, the jury so decides, they can find a confidential or fiduciary relationship without the attorney-client relationship."

Despite the defendant's argument to the contrary, the court correctly submitted to the jury the question of whether there was an attorney-client relationship between the parties. Whether an attorney-client relationship exists is an issue for the trier of fact, and the party claiming its existence bears the burden of establishing such a relationship. *Solomon* v. *Aberman,* 196 Conn. 359, 384, 493 A.2d 193 (1985); R. Mallen & V. Levit, Legal Malpractice (2d Ed. 1981) § 123; see also *Goldenberg* v. *Corporate Air, Inc.,* 189 Conn. 504, 508–509, 457 A.2d 296 (1983), overruled in part on other grounds, *Burger & Burger, Inc.* v. *Murren,* 202 Conn. 660, 522 A.2d 812 (1987); *State* v. *Jones,* 180 Conn. 443, 449, 429 A.2d 936 (1980), overruled in part on other grounds, *State* v. *Powell,* 186 Conn. 547, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982). Given the evidence presented by the plaintiff on this issue, that the defendant had represented him in an accident case in 1969, that the plaintiff had sought legal advice from him in the late 1970s and early 1980s, and that he had been represented by him during that time in a zoning dispute concerning the airport, the court was justified in permitting the jury to decide whether an attorney-client relationship existed.

The court was equally correct in asking the jury to determine whether, even in the absence of an attorney-client relationship, a fiduciary or other confidential relationship existed between the parties. Rather than attempt to define "a fiduciary relationship in precise detail and in such a manner to exclude new situations," we have instead chosen to leave "the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." *Harper* v. *Adametz,* 142 Conn. 218, 225, 113 A.2d 136 (1955); *Alaimo* v. *Royer,* 188 Conn. 36, 41, 448 A.2d 207 (1982); see *Cohen* v. *Cohen,* 182 Conn.

193, 203, 438 A.2d 55 (1980); *Hieble* v. *Hieble,* 164 Conn. 56, 61, 316 A.2d 777 (1972); *Worobey* v. *Sibieth,* 136 Conn. 352, 359, 71 A.2d 80 (1949). On the present record, which indicates that the defendant is the older brother of the plaintiff, and that the plaintiff continually placed his trust and confidence in the defendant for both legal and nonlegal advice, we are convinced that the court properly submitted this issue to the jury.

The defendant claims further error in the court's charge to the jury on the burden of proof on the issue of fraud. The portion of the charge to which the defendant objects states: "[I]f the plaintiff has proved to you that there was a special relationship of trust and confidence and the likelihood of the exercise of personal influence and control such that one would expect of the other fair dealing and mutual consideration, there can be a presumption of fraud arising out of that relationship. That's the fiduciary or confidential relationship. Then, the burden of proving there was no fraud would shift to the defendant and he must prove no fraud by clear, convincing and unequivocal evidence." The defendant, at trial, took exception to the charge on two grounds: the court improperly shifted to the defendant the burden of disproving fraud and it required him to satisfy that burden by the unduly stringent standard of "clear, convincing and unequivocal evidence," rather than simply by a preponderance of evidence. The defendant now renews both of those objections.

Before examining the propriety of these instructions, we must first scrutinize the quoted language in the context of the charge as a whole to discern the court's exact point of reference. Although the court stated that "there can be a presumption of *fraud* arising out of" (emphasis added) a confidential relationship, and that the defendant thereafter had the "burden of proving there was no fraud," that portion of the charge in fact was an integral part of the court's description of

the elements of a cause of action for breach of a fiduciary or confidential relationship. As the defendant virtually concedes, examined in context, the court's instructions regarding the presumption of fraud and the shifting burden of proof do not relate to the charge on fraud, but rather to the charge on breach of a fiduciary or confidential relationship. Having reviewed the charge in its entirety, we conclude that the court used the term "fraud" as a shorthand reference to the presumption of unfair dealing that arises once a fiduciary or confidential relationship has been proven. See *Alaimo* v. *Royer,* supra, 41.

Against this background, we consider the defendant's claim that the trial court improperly shifted to the defendant the burden of proving, by clear, convincing and unequivocal evidence, that he did not violate any fiduciary duties owed to the plaintiff. A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. *Harper* v. *Adametz,* supra, 225; *Worobey* v. *Sibieth,* supra, 359; *Hemingway* v. *Coleman,* 49 Conn. 390, 392 (1881). The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. D. Dobbs, Remedies (1973) § 10.4, p. 682.

Proof of a fiduciary relationship therefore imposes a twofold burden upon the fiduciary. Once "a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fidicuary. See *Worobey* v. *Sibieth,* supra; Dobbs, [supra,] § 10.4." *Alaimo* v. *Royer,* supra. Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and

unequivocal evidence. Id.; *Miller* v. *Appleby,* 183 Conn. 51, 55, 438 A.2d 811 (1981); *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 546, 391 A.2d 170 (1978); *Hieble* v. *Hieble,* supra, 62; *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 458–59, 242 A.2d 708 (1968); *Creelman* v. *Rogowski,* 152 Conn. 382, 384, 207 A.2d 272 (1965); *Basak* v. *Damutz,* 105 Conn. 378, 382–83, 135 A. 453 (1906); see C. McCormick, Evidence (3d Ed. 1984) § 340, p. 959. These rules obtain in other jurisdictions as well. See, e.g., *Hicks* v. *Clayton,* 67 Cal. App. 3d 251, 262, 136 Cal. Rptr. 512 (1977); *Nelson* v. *Walden,* 186 So. 2d 517, 519 (Fla. App. 1966); *In Matter of Miller,* 568 S.W.2d 246, 251 (Mo. 1978).

Applying these standards in this case, we conclude that the trial court's charge was reasonably accurate when it effectively instructed the jury that if the plaintiff had established that there was a fiduciary or confidential relationship between the parties, the burden would then shift to the defendant to prove, by "clear, convincing and unequivocal evidence," that he had dealt fairly with the plaintiff. This charge gave the jury adequate guidance for its response to the first interrogatory. See *Atlantic Richfield Co.* v. *Canaan Oil Co.,* supra, 240. There is no error with respect to this aspect of the charge.

In addition to attacking the court's charge to the jury, the defendant challenges certain evidentiary rulings made by the court during the trial. Specifically, he contests the relevancy of oral testimony by a real estate appraiser, on behalf of the plaintiff, concerning the value of the property transferred by Jessica Dunham to the defendant in 1974, and the relevancy of an exhibit, a written appraisal by the same witness that contained the same information. He also claims that the court erred in refusing to admit into evidence, on the ground of remoteness, certain wills of Jessica Dunham which had been offered by the defendant. The

defendant maintains that each of these rulings constituted an abuse of discretion by the court which prejudiced his case.

The rules for determining the admissibility of evidence are well settled. The trial court has broad discretion to determine both the relevancy and remoteness of evidence. *State* v. *Fritz,* 204 Conn. 156, 167, 527 A.2d 1157 (1987); *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986); *Turgeon* v. *Turgeon,* 190 Conn. 269, 273, 460 A.2d 1260 (1983); *Hughes* v. *Contemporary Mission, Inc.,* 180 Conn. 150, 153, 429 A.2d 827 (1980). Only upon a showing of a clear abuse of discretion will this court set aside on appeal rulings on evidentiary matters. *State* v. *Fritz,* supra, 167–68; *State* v. *Boucino,* supra; *State* v. *Falcon,* 196 Conn. 557, 566, 494 A.2d 1190 (1985). In considering the relevancy of evidence, we ask whether "it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985); *State* v. *Mastropetre,* 175 Conn. 512, 517, 400 A.2d 276 (1978)." *State* v. *Talton,* 197 Conn. 280, 285, 497 A.2d 35 (1985). Because there is no precise and universal test of relevancy, however, the question must ultimately be addressed on a case-by-case basis in accordance with " 'the teachings of reason and judicial experience.' " *State* v. *Sharpe,* supra; *Johnson* v. *Healy,* 183 Conn. 514, 516, 440 A.2d 765 (1981); *Hoadley* v. *University of Hartford,* 176 Conn. 669, 672, 410 A.2d 472 (1979).

As the trial court determined, both the oral testimony and written appraisal by William Lanese, a real estate appraiser, concerning the market value of the property conveyed by Jessica Dunham to the defendant in 1974, were germane to the issue of undue influence. Lanese's oral testimony and written report were offered by the plaintiff to show that there was a discrepancy between the market value of the property and the price paid by

the defendant. The plaintiff proffers a persuasive argument in support of the relevance of such evidence. First, at the time of that property transfer in 1974, there existed an attorney-client relationship between the defendant and Jessica Dunham; therefore, that transaction, from which the defendant benefited substantially, may have given rise to a presumption of undue influence and breach of fiduciary duty on the defendant's part. See *McKnight* v. *Gizze,* 107 Conn. 229, 235, 140 A.2d 116 (1928). If the plaintiff could demonstrate that the defendant had exercised undue influence over Jessica Dunham in 1974, he would have thereby bolstered his claim that the defendant subsequently exercised undue influence over her in preparing and securing her execution of her will in 1978. The written appraisal drafted by Lanese was equally relevant because it documented his oral testimony regarding the value of the property in question. See *State* v. *Randolph,* 190 Conn. 576, 584, 462 A.2d 1011 (1983); *Aczas* v. *Stuart Heights, Inc.,* 154 Conn. 54, 56, 221 A.2d 589 (1966). Although the defendant claims that the trial court placed undue emphasis on the appraisal by admitting it as an exhibit, the weight to be accorded such an exhibit is a matter for the jury. *State* v. *Randolph,* supra, 585; *Petroman* v. *Anderson,* 105 Conn. 366, 370, 135 A. 391 (1926).

The trial court likewise did not abuse its discretion in ruling that the early wills of Jessica Dunham, which were offered by the defendant, were too remote in time to be relevant. At trial, the defendant attempted to introduce into evidence two wills of Jessica Dunham which preceded her 1978 will, one of which was executed in 1952, the other in 1961. He argued at trial, and reiterates on appeal, that they were relevant to show her familiarity with testamentary dispositions and her willingness to change her own testamentary dispositions. In light of the fact that the defendant could

have relied on other testimony to illustrate these points, and that the disputed will underlying this litigation was executed by Jessica Dunham in 1978, we conclude that the court did not abuse its discretion in excluding, on the ground of remoteness, two prior wills, the most recent of which was executed some seventeen years earlier. See *State* v. *Simms,* 201 Conn. 395, 408–409, 518 A.2d 35 (1986).

The defendant maintains, finally, that the action on the first count is barred by the statute of limitations. He acknowledges that the first count is an equitable action seeking relief from a probate decree. He argues, however, that because the plaintiff prevailed on his underlying claim for breach of a fiduciary or confidential relationship, a cause of action which sounds in tort, the three year statute of limitations set forth in General Statutes § 52-577 applies. The plaintiff signed the disputed waiver on October 31, 1978, but did not file this action until November 3, 1982. According to the defendant, because the plaintiff did not bring the action "within three years from the date of the act or omission complained of," the action is now time barred. General Statutes § 52-577.

The fallacy in the defendant's argument is his assumption that a court, acting under its equitable powers, is bound to apply the statute of limitations that governs the underlying cause of action. In fact, in an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute. *Lesser* v. *Lesser,* 134 Conn. 418, 422–23, 58 A.2d 512 (1948); *Nichols* v. *Nichols,* 79 Conn. 644, 656–57, 66 A. 161 (1907); *Jeffery* v. *Fitch,* 46 Conn. 601, 605 (1879). Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action

should be heard, they are by no means obliged to adhere to those time limitations. *Lesser* v. *Lesser,* supra, 422; *Nichols* v. *Nichols,* supra, 657; *Jeffery* v. *Fitch,* supra.

A party may, however, be barred from seeking equitable relief by the defense of laches, which applies only if there has been an unreasonable, inexcusable and prejudicial delay in bringing suit. *Cummings* v. *Tripp,* 204 Conn. 67, 88, 527 A.2d 1230 (1987); *Schomer* v. *Shilepsky,* 169 Conn. 186, 194, 363 A.2d 128 (1975); *Robinson* v. *Myers,* 156 Conn. 510, 519, 244 A.2d 385 (1968). "A conclusion that a plaintiff has [not] been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law." *Papcun* v. *Papcun,* 181 Conn. 618, 621, 436 A.2d 282 (1980); *Cummings* v. *Tripp,* supra. In this case, the jury specifically found, by way of its response to the third interrogatory, that the plaintiff was not guilty of laches, and the record adequately supports the jury's conclusion.

## B

The defendant's remaining claims of error relate to the issue of whether the defendant exercised undue influence over Jessica Dunham in preparing and securing her execution of the disputed will. He contends that the trial court erred: (1) in shifting to the defendant the burden of disproving undue influence because the defendant was the testator's lawyer, and had drafted her will and received substantial benefits thereunder; (2) in charging the jury that if it found the terms of Jessica Dunham's will unfair, then it could construe those terms as being indicative of undue influence; (3) in submitting the first count to the jury because the plaintiff had presented insufficient evidence on the issue of undue influence; (4) in submitting to the jury, as a

matter of fact, the issue of whether Jessica Dunham had executed her will under the supervision of the defendant.

We decline to consider those claims, however, because neither this court nor the trial court has original subject matter jurisdiction to admit a will to probate or to entertain claims by parties contesting its admission. Rather, the Probate Court, by virtue of its long-standing statutory authority, has exclusive subject matter jurisdiction over matters involving the validity of wills and the settlement of estates. General Statutes § 45-4; *Gaucher* v. *Estate of Camp,* 167 Conn. 396, 398, 355 A.2d 303 (1974); *Delehanty* v. *Pitkin,* 76 Conn. 412, 418, 56 A. 881 (1904); *Johnes* v. *Jackson, Exr.,* 67 Conn. 81, 90, 34 A. 709 (1895); *Butler* v. *Sisson,* 49 Conn. 580, 588 (1882); *Fortune* v. *Buck,* 23 Conn. 1, 8 (1854); 1 W. Locke & P. Kohn, Connecticut Probate Practice (1951) §§ 70, 71. The Superior Court, in equitable proceedings, has the power to grant relief against probate judgments only if it "concludes that the probate decree attacked is, or at least should be treated as, void because of fraud, mistake or a like equitable ground." *DelVecchio* v. *DelVecchio,* 146 Conn. 188, 193, 148 A.2d 554 (1959); *Lewis* v. *Lewis,* 162 Conn. 476, 480, 294 A.2d 637 (1972).

In the present case, the plaintiff's pleadings never asked the trial court to set aside the decree admitting Jessica Dunham's will to probate on the ground that the will resulted from the exercise of undue influence by the defendant upon his mother. The plaintiff merely sought to have his waiver of a probate hearing set aside so that, at some time in the future, he might have the opportunity, in Probate Court, to litigate this question on its merits. The question of undue influence was at issue only because the plaintiff, in contesting the validity of his own waiver, had to prove, in the words of the

trial court, that he had lost "a meritorious defense to the admission of the will to probate." See *Folwell* v. *Howell,* 117 Conn. 565, 572, 169 A. 199 (1933); 5 J. Pomeroy, Equity Jurisprudence (1919) § 2088. Accordingly, the jury, in its affirmative response to the second interrogatory, found only that the plaintiff had proven that he had a meritorious *claim* of undue influence "that would more probably than not have prevented the will from being probated." The trial court's judgment, following the verdict of the jury, set aside the probate decree but did not invalidate Jessica Dunham's will.

Because the judgment of the trial court therefore does not purport to be a final adjudication of the issue of undue influence, the defendant's claims of error relating thereto do not need to be resolved. We have determined that there is no error with regard to the court's instructions or evidentiary rulings that led the jury to find that the plaintiff's signed waiver of probate proceedings should be set aside. Even if we were to conclude, hypothetically, that the trial court might have erred in its rulings relating to the subsidiary issue of undue influence, there would be no point in ordering a new Superior Court trial on that issue alone. The proper place to address the merits of the issue of undue influence is in the Probate Court.

There is no error in either appeal.

In this opinion the other justices concurred.