[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The present action arises out of a claim by the plaintiffs that they sustained losses as a result of the defendant's failure to extend margin loans to the plaintiffs with respect to the purchase of stock. The claims of the plaintiff are set forth under various theories including breach of a margin agreement and implied obligations; failure to give notice of intention not to extend a margin loan; tortious misconduct and interference with financial expectancies; breach of obligations of good faith and fair dealing; breach of fiduciary duty and misrepresentation. The defendant has moved for a summary judgment and asserts that a margin account does not impose any obligation to make any given margin loan; that there is no factual support for the plaintiff's claims; that the plaintiff has not demonstrated its loss with reasonable clarity or with reasonable probability and the claimed losses are speculative; and that the plaintiffs cannot establish a breach of a fiduciary duty. The plaintiffs resist the claims asserted by the defendant and the court had reviewed the voluminous memoranda, affidavits and exhibits filed by the respective parties in support of the positions which they advocate.
The plaintiffs' claims arise out of an attempt to increase ownership of Southwest Realty Limited ("Southwest"), a publically traded limited partnership. In November 1988, Southwest issued a prospectus which described an offering of deferred depository receipts under which an owner of a common share of Southwest was entitled to receive two rights. Under the prospectus, every fifteen rights entitled the holder to purchase one depository receipt at a prescription price of $15.00 per share. The prospectus also described warrents which could be converted into a depository receipt at a stated price. The affidavits filed on behalf of the plaintiff contain factual support for the facts herein after stated.
The plaintiffs had opened a personal trading account with the defendant in 1985 and the plaintiffs began to exercise a CT Page 6620 volume of trades for acquiring a position in Southwest in 1987. A trading account was also opened with the defendant with the expressed purpose of investing in Southwest. By the end of November 1988, the individual plaintiff owned approximately 9% of the equity of Southwest. It is further claimed that the defendant was advised that the plaintiff was considering expanding his holding in Southwest to the fullest extent possible and that he was seeking to acquire and exercise as many of the Southwest rights as was feasible. The plaintiff claims that the defendant was aware of his desire to obtain as many rights as possible and to use as much of the margin account as was possible. It is also claimed that upon inquiry, the plaintiff was advised by the representative of the defendant that the preferred depository receipts would be a marginable security and that there would be no problem in utilizing the margin account to maximize the amount of preferred depository receipts purchased. The plaintiff also claims that concern was expressed regarding the ability of the defendant to perform what was going to be the exercise of a substantial block of rights and that the plaintiff was advised that the defendant could handle the plaintiff's trades and there would be no problem in meeting the needs of the plaintiff.
During the week preceding the expiration date of the rights offering, the plaintiff was advised that the defendant was uncomfortable with the loaning 50% margin on the depository receipts since the issue was going to be newly traded. The plaintiff advised the defendant that he was going to maintain a cash equity position between 60% and 65%. The defendant indicated that such high equity position in the margin account would be acceptable. On Friday, January 20, 1989, the last business day before the expiration date on January 23, the plaintiff was advised, for the first time, that the defendant had decided not to loan any more than $500,000 on the margin for this particular transaction. On Saturday, the following day, the plaintiff was advised, for the first time, that the defendant might not be willing to extend any margin on the transaction. On January 23, 1989, the expiration date, the plaintiff was advised that the defendant would not extend any margin of credit to the plaintiff because the defendant had become "nervous" about the size of the transaction and did not want to be involved. The plaintiffs further claim that despite frantic efforts on January 23, the plaintiff was unable to procure another brokerage house to extend the necessary margin of credit for the entire transaction. The plaintiff also claims that he was unable to purchase all the preferred depository receipts that could have been purchased and accordingly, he was only able to obtain approximately a 31% ownership interest in Southwest rather than the 42.3% ownership interest he would have obtained if the defendant had completed the transaction. The plaintiff claims CT Page 6621 that he lost the opportunity to purchase 72,600 preferred depository receipts and that he sustained a loss by reason of the difference between purchase price and the value of the shares and lost the opportunity to obtain sufficient holdings to influence the management of Southwest with respect to future policy.
While the defendant disputes the factual claims made by the plaintiff, a factual issue does exist as to whether the defendant knew of the transaction contemplated by the plaintiff; whether the defendant agreed to handle that transaction on a margin account; and whether the defendant wrongfully declined to carry through the transaction. It is not the position of the court to review and to decide the disputed factual claims between the parties. Sufficient factual support exists for the claims asserted in the complaint so that the dispute should not be resolved by a summary judgment procedure.
The defendant also claims that there is an insufficient basis for the demonstration for the existence of a fiduciary duty. "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence by the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other . . . The superior position of the fiduciary or dominant party affords him greater opportunity for abuses of the confidence reposed in him . . . ." (citations omitted) Dunham v. Dunham, 204 Conn. 303, 322 (1987). Factual issues exist as disclosed by the materials submitted by the parties, as to whether a fiduciary relationship existed or did not exist. Similarly, the defendant's claims with respect to the "speculative" nature of the damages claimed by the plaintiffs should await an evidentiary hearing.
Accordingly, the Motion for Summary Judgment is denied.
Rush, J.