KENNETH MARSHALL, JR. *v.* BRENDA J. SAWICKI
(AC 28330)

Lavine, Robinson and Stoughton, Js.

Argued February 20—officially released June 17, 2008

*Oliver B. Dickins*, for the appellant (defendant).

*William H. Cashman*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, Brenda J. Sawicki, appeals from the judgment of the trial court, rendered in favor of the plaintiff, Kenneth Marshall, Jr. The defendant claims that the court erroneously found that she had acquired an interest in the plaintiff's business in

breach of the fiduciary duty she owed to him.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendant's appeal. The plaintiff and the defendant's husband are first cousins. When it became apparent that the plaintiff's drug dependency rendered him unable to operate his catering business, Family Styles Professional Catering, LLC, his mother contacted the defendant, a business broker and consultant, to discuss selling the business. The parties entered into a contract in June, 2003, titled "Exclusive Right to Represent Seller Contract," to be in effect for six months from June 3 to December 3, 2003. Under the contract, the defendant, in her role as a broker, would produce a buyer for the business for a fee of 5 percent of the purchase price or exchange value. In October, 2003, a buyer, Ray Osland, offered to buy the business for $90,000 and agreed to pay $10,000 as a down payment. The defendant transferred by check approximately $3500 of that $10,000 to the plaintiff. The plaintiff entered a rehabilitation facility on December 1, 2003, two days prior to the expiration of the parties' contract, and remained in that program until September 5, 2004.

---

[1] The defendant presents three issues on appeal: "(1) Did the defendant . . . perform her contractual obligation under her listing contract with the plaintiff? (2) Does the burden of proof doctrine of *Dunham* v. *Dunham*, 204 Conn. 303, 322–23, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996), relating [to] the fairness of transactions between a fiduciary and his client, also apply to the question of whether such a transaction occurred? [and] (3) Was the trial court's finding that the defendant became a purchaser of the plaintiff's business and no longer a mere sales agent based on contract proposals, which were not signed or adopted by the defendant, clearly erroneous." (Internal quotation marks omitted.)

After considering the entire record, the parties' appellate briefs and arguments, it appears that the only issue in this case is whether the court found that the defendant acquired an interest in the plaintiff's business, thereby shifting the burden of proof to her to show fair dealing by clear and convincing evidence.

The parties disagree on the events that followed Osland's payment of the $10,000 deposit. The plaintiff maintains that on December 1, 2003, Osland purchased a 50 percent interest in the business and that the defendant obtained the remaining interest. The defendant asserts that she applied approximately $6500 of Osland's deposit toward the payment of the business' outstanding bills to maintain the business pending its sale and at the direction of the plaintiff's mother. She further maintains that the closing with Osland never occurred because Osland discovered that the equipment had been sold, the ovens did not work and the business did not pass health inspections. The defendant's belief was that after Osland refused to proceed with the closing, the plaintiff and Osland agreed to work together to market and to sell the business to someone else. Thus, she never acquired any interest in the business. What the parties do agree on is that in April, 2004, Osland sold Family Styles Professional Catering, LLC, renamed Celebrations Catering, LLC, to Lunch Depot, LLC, for $25,000. The parties also do not dispute that the defendant never received any compensation under the contract. Neither the plaintiff nor the defendant were able to provide an explanation for how or why Osland became the sole owner of the business or how the plaintiff lost all of his interest in the business.

In September, 2004, the plaintiff brought this action against the defendant for breach of fiduciary duty. The defendant counterclaimed that the plaintiff had breached their contract because he had not notified her of an earlier offer to purchase or that the equipment had been sold. At trial, the plaintiff offered into evidence (1) the defendant's business card, (2) an early offer from his friend to buy the business, (3) a purchase and sale agreement between the plaintiff and the defendant as the sellers and Osland as the buyer, signed by the

plaintiff as the purchaser and as the seller, (4) a purchase and sale agreement between the plaintiff as the seller and the defendant as the buyer, signed by the plaintiff as the seller, (5) bank and utility statements relating to the business, (6) an e-mail from the business' landlord providing an extension to the notice to quit the premises, (7) the parties' contract and (8) the business' profit and loss statements for 2001 and 2002. The defendant offered into evidence (1) a document giving the plaintiff's mother power of attorney, signed by the plaintiff, (2) a bank statement and (3) a bill of sale of the business to Lunch Depot, LLC, signed by Osland. After a two day trial, the court rendered judgment in favor of the plaintiff and awarded him $79,293.57 in damages and costs. This appeal followed. Additional facts will be set forth where necessary.

As a preliminary matter, we set forth our standard of review. On appeal, the defendant claims that the court erroneously determined that she had engaged in self-dealing to acquire an interest in the plaintiff's business in breach of her fiduciary duty to him. This claim is subject to the clearly erroneous standard of review. See *Spector* v. *Konover*, 57 Conn. App. 121, 126, 747 A.2d 39, cert. denied, 254 Conn. 913, 759 A.2d 507 (2000). "A finding of fact is clearly erroneous when there is no evidence in the record to support it : . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In determining whether the court's decision was clearly erroneous, we must examine the court's decision in the context of the heightened standard of proof imposed on a fiduciary." (Citations omitted; internal quotation marks omitted.) Id., 126–27.

"A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill

or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. . . . Proof of a fiduciary relationship therefore imposes a twofold burden upon the fiduciary. Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Citations omitted; internal quotation marks omitted.) *Dunham* v. *Dunham*, 204 Conn. 303, 322–23, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996); see also *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 455–57, 844 A.2d 836 (2004).[2]

In the present case, the defendant seems to argue that because the court erroneously found that she had

---

[2] Our Supreme Court stated in *Cadle Co.* that "[a]lthough not always expressly stated, the basis upon which the aforementioned burden shifting and enhanced burden of proof rests is, essentially, that undue influence will not be presumed . . . however . . . where a fiduciary relation exists between the parties to a transaction or contract, and where one has a dominant or controlling force or influence over the other. . . . *[I]f the superior party obtains a possible benefit*, equity raises a presumption against the validity of the transaction or contract, and casts upon such party the burden of proving fairness, honesty, and integrity in the transaction or contract. . . . Therefore, it is only when the confidential relationship is shown together with suspicious circumstances, or where there is a transaction, contract, or transfer between persons in a confidential or fiduciary relationship, and where the dominant party is the beneficiary of the transaction, contract, or transfer, that the burden shifts to the fiduciary to prove fair dealing. . . . [W]hen a breach of fiduciary duty is alleged, and the allegations concern fraud, self-dealing or a conflict of interest, the burden of proof shifts to the fiduciary to prove fair dealing by clear and convincing evidence." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 456–57.

acquired an interest in the plaintiff's business, it improperly determined that the burden of proof had shifted to her to show fair dealing and that she failed to meet that burden of proof. To support her argument, she relies on *Ramin* v. *Ramin*, 281 Conn. 324, 349, 915 A.2d 790 (2007),[3] and *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 455–57, to assert that *Dunham* requires the plaintiff to show a tainted transaction before the burden shifts to the fiduciary to show fair dealing by clear and convincing evidence. The defendant, however, has failed to provide this court with an adequate record to review her claim.

"[A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record . . . . Without the necessary factual and legal conclusions . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." *Cianbro Corp.* v. *National Eastern Corp.*, 102 Conn. App. 61, 72, 924 A.2d 160 (2007). In this case, the court did not set forth adequately the factual and legal basis on which it determined that the defendant breached her fiduciary duty.

In its memorandum of decision, the court determined that a fiduciary relationship existed between the parties and that the defendant had failed to sustain her burden of proving fair dealing. The court observed that "any interest the plaintiff had in this business had evaporated" by the time Osland sold the business to the Lunch Depot, LLC, but did not find any facts in relation to that transaction. More importantly, it was unclear whether the court found specifically that the defendant

---

[3] "[O]nce it has been shown that a fiduciary has engaged in self-dealing, he has the burden to establish the fairness of the transaction by clear and convincing evidence . . . ." (Citation omitted.) *Ramin* v. *Ramin*, supra, 281 Conn. 349–50.

acquired any interest in the plaintiff's business. With respect to the purchase and sales agreement between the plaintiff and the defendant, the court stated: "It can be seen that the defendant is now a purchaser of the plaintiff's business and no longer a mere sales agent. This agreement, however, contains the plaintiff's signature but no signature of the defendant. As such, the court cannot find that [the document] constitutes a binding agreement to purchase." Similarly, after discussing the sales agreement between the plaintiff and the defendant as the sellers and Osland as the buyer, the court observed: "It would appear, therefore, that under the defendant's direction, the plaintiff now had a minority ownership interest in his business. Once again, however, this sales agreement bears only the signature of the plaintiff, who signed both as the purchaser and as the seller." Thus, the court did not articulate in its memorandum of decision the evidentiary basis from which it arrived at its findings and conclusions.

"It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 232, 828 A.2d 64 (2003). In the present case, we cannot determine what evidence the court relied on to determine that the burden of proof had shifted to the defendant to show fair dealing or the evidentiary basis from which it concluded that the defendant failed to meet her burden. Without further articulation, we cannot engage in meaningful review of the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.