KENNETH MARSHALL, JR. *v.* BRENDA J. SAWICKI
(SC 18225)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued October 26—officially released November 17, 2009

*Oliver B. Dickins,* for the appellant (substitute defendant).

*William H. Cashman,* for the appellee (plaintiff).

*Opinion*

PER CURIAM. The plaintiff, Kenneth Marshall, Jr., retained the defendant, Brenda J. Sawicki,[1] a business broker, to help him sell his catering business. After the business had been sold to a third party in a transaction under which the plaintiff received no compensation, the plaintiff brought an action against the defendant alleging breach of her fiduciary duty. The trial court rendered judgment in favor of the plaintiff and awarded him $79,293.57 in damages and costs. The defendant then appealed from that judgment to the Appellate Court, which affirmed the judgment of the trial court. *Marshall* v. *Sawicki*, 108 Conn. App. 418, 425, 948 A.2d 1053 (2008). We granted the defendant's petition for certification to appeal from the judgment of the Appellate Court limited to the following issue: "Did the Appellate Court properly conclude that the defendant did not provide an adequate record for review to determine whether the trial court had shifted the burden of proof to the defendant to prove fair dealing?" *Marshall* v. *Sawicki*, 289 Conn. 914, 957 A.2d 878 (2008). We conclude that certification was improvidently granted and dismiss the appeal.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The plaintiff and the defendant's husband are first cousins. When it became apparent that the plaintiff's drug dependency rendered him unable to operate his catering business . . . his mother contacted the defendant, a business broker and consultant, to discuss selling the business. The parties entered into a contract in June, 2003, titled 'Exclusive Right to Represent Seller Contract,' to be in effect for six months from June 3 to

---

[1] After the defendant died in July, 2009, this court granted a motion permitting Chester Sawicki, the executor of the defendant's estate, to be substituted as party defendant. For convenience, all references to the defendant are to Brenda J. Sawicki.

December 3, 2003. Under the contract, the defendant, in her role as a broker, would produce a buyer for the business for a fee of 5 percent of the purchase price or exchange value. In October, 2003, a buyer, Ray Osland, offered to buy the business for $90,000 and agreed to pay $10,000 as a down payment. The defendant transferred by check approximately $3500 of that $10,000 to the plaintiff. The plaintiff entered a rehabilitation facility on December 1, 2003, two days prior to the expiration of the parties' contract, and remained in that program until September 5, 2004.

"The parties disagree on the events that followed Osland's payment of the $10,000 deposit. The plaintiff maintains that on December 1, 2003, Osland purchased a 50 percent interest in the business and that the defendant obtained the remaining interest. The defendant asserts that she applied approximately $6500 of Osland's deposit toward the payment of the business' outstanding bills to maintain the business pending its sale and at the direction of the plaintiff's mother. She further maintains that the closing with Osland never occurred because Osland discovered that the equipment had been sold, the ovens did not work and the business did not pass health inspections. The defendant's belief was that after Osland refused to proceed with the closing, the plaintiff and Osland agreed to work together to market and to sell the business to someone else. Thus, she never acquired any interest in the business. What the parties do agree on is that in April, 2004, Osland sold [the business] to Lunch Depot, LLC, for $25,000. The parties also do not dispute that the defendant never received any compensation under the contract. Neither the plaintiff nor the defendant were able to provide an explanation for how or why Osland became the sole owner of the business or how the plaintiff lost all of his interest in the business.

"In September, 2004, the plaintiff brought this action against the defendant for breach of fiduciary duty. The defendant counterclaimed that the plaintiff had breached their contract because he had not notified her of an earlier offer to purchase or that the equipment had been sold. . . . After a two day trial, the court rendered judgment in favor of the plaintiff and awarded him $79,293.57 in damages and costs." *Marshall* v. *Sawicki*, supra, 108 Conn. App. 420–22. The defendant appealed from the judgment of the trial court to the Appellate Court, which affirmed the judgment of the trial court. Id., 425. This appeal followed.

The defendant claims that the Appellate Court improperly concluded that the record was insufficient to allow for a meaningful review of the defendant's appeal. The defendant further claims that the trial court improperly failed to require the plaintiff to produce any evidence of wrongdoing before it required the defendant, based solely on her role as a fiduciary, to bear the enhanced burden of proving her fair dealing by clear and convincing evidence. After examining the entire record on appeal and considering the briefs and oral arguments of the parties, we have determined that the appeal in this case should be dismissed on the ground that certification was improvidently granted.

The appeal is dismissed.