MONTANARO BROTHERS BUILDERS, INC., ET AL. *v.*
MAURICE M. SNOW ET AL.
(10933)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued April 8—decision released June 21, 1983

*Daniel Shepro,* with whom, on the brief, was *Allan J. Rosen,* for the appellants (plaintiffs).

*Bernard Green,* with whom, on the brief, was *Daniel Green,* for the appellees (defendants).

PETERS, J. This case concerns the enforceability of an option contract for the purchase of real property in Easton. The plaintiffs, Montanaro Brothers Builders, Inc., Charles A. Montanaro, Jr., and Michael V. Montanaro, relying on a recorded option agreement executed by the defendants, Maurice H. Snow, Philip L. Snow, Douglas I. Snow and William V. Snow, brought an action for specific performance, and for injunctive and monetary relief. The defendants filed an answer and a counterclaim challenging the enforceability of the option agreement. From a judgment rendered in the

defendants' favor, after a hearing by the court, the plaintiffs have appealed.[1]

There is no present contest about the facts established by the trial court's memorandum of decision. The defendants are the owners of properties known as Snow's Farm located on the easterly side of Sport Hill Road in Easton. As early as 1973, the plaintiffs, especially Michael Montanaro, a residential real estate developer, evidenced an interest in acquiring the properties. In 1975, during discussions preliminary to the eventual signing of the option agreement, Michael Montanaro was informed that part of the Snow properties, which consisted of some seventy-three acres, had previously been conveyed, by unrecorded deeds, to Phyllis Snow and to Philip Snow. Two years later, the parties reached an oral agreement for a sale of Snow's Farm that would exclude the milk distribution area, Philip's house and approximately six acres of land. An attorney for the plaintiffs then drafted the specific terms of the contract giving the plaintiffs the option to purchase Snow's Farm. After modifications made to accommodate the wishes of all of the parties, the option agreement that is in issue was executed on May 23, 1977. Prior to the signing of the option agreement by the four male Snows, Phyllis Snow had her deed of conveyance recorded. The option agreement itself was not recorded until July 27, 1978.

The option agreement contained the following salient terms. The plaintiffs acquired the right to purchase Snow's Farm for $450,000, subject to a price reduction to $420,000 if subdivision approval could be obtained for only fifteen or less residential building lots.

---

[1] In the trial court, the plaintiffs amended their complaint to make Phyllis Snow a codefendant. The trial court held that her property was not included in the option agreement. The plaintiffs have withdrawn their appeal from the judgment in favor of Phyllis Snow.

The plaintiffs' option to purchase, for which they paid $15,000, was for a twelve month option period. In the event that a subdivision application remained pending at the end of the option period, the plaintiffs were granted the right to extend the option period for an additional two month period by payment of $500 a month for each month of extension. All of the option payments were nonrefundable if the plaintiffs failed to exercise their option, but were to be applied toward the purchase price if the option was exercised. The property to be conveyed was described in open-ended fashion as containing "appoximately seventy-three (73) acres." In express recognition of the absence of an up-to-date land survey, the plaintiffs, upon exercise of the option, were charged with presenting the defendants with a survey and subdivision plan. The subdivision plan was to "delineate the seller's present Homestead and approximately six (6) acres, more or less, which the seller will retain as his own."[2]

In accordance with the terms of the option agreement, the plaintiffs paid the defendants the $15,000 option price and, in April, 1978, sent the defendants' attorney a check for $1000 to extend the option for two months. A preliminary boundary map, but no subdivision plan, was shown to the defendants in July, 1978. The delineation of the retained six acres on that map encountered disagreement by the defendants. Nonetheless, the plaintiffs demanded, by their attorney's letter of August 10, 1978, that a closing take place prior to August 12, 1978. The defendants refused, and this litigation ensued.

---

[2] Paragraph 7 of the option agreement reads as follows, in its entirety: "The seller believes that the subject premises contain approximately seventy-three (73) acres. The parties realize that the land has not yet been completely surveyed. In the event the buyer exercises this option, the buyer will present the seller with a survey and subdivision plan. The subdivision plan will delineate the seller's present Homestead and approximately six (6) acres, more or less, which the seller will retain as his own."

The trial court concluded that the option agreement was rendered unenforceable because of the uncertainty in its description of the retained homestead and six acres. The indefiniteness of the retained property, which could not be cured by reliable external evidence, caused the option agreement to fail to satisfy the Statute of Frauds, General Statutes § 52-550. Accordingly, the court's judgment declared the option agreement to be null and void and adjudged the plaintiffs to have no right, title or interest in Snow's Farm.

In their appeal, the plaintiffs raise five claims of error. The plaintiffs maintain that the trial court erred in concluding that: (1) their option agreement failed to satisfy the Statute of Frauds; (2) there was no meeting of the minds sufficient to satisfy the Statute of Frauds; (3) the option had not been properly exercised; (4) specific performance could not be ordered by modification of the agreement with respect to the land to be conveyed and the price to be paid; and (5) the defendants were not obligated to repay to the plaintiffs the amounts paid for the option and its extension. The plaintiffs, since they elected to file with this court no transcript of the trial court proceedings, cannot and do not contest any of the trial court's findings of fact but challenge only that court's conclusions of law.

The plaintiffs' first claim is that the written option agreement is sufficiently definite to satisfy the requirements of the Statute of Frauds, General Statutes § 52-550. We do not agree. Concededly, option agreements relating to interests in real property fall within the Statute. *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 11, 420 A.2d 1142 (1979); *Botticello* v. *Stefanovicz,* 177 Conn. 22, 30–31, 411 A.2d 16 (1979). Although we may prefer interpretations of agreements that find them sufficiently definite to satisfy the Statute; *Robert Lawrence Associates, Inc.*

v. *Del Vecchio,* supra; *Spicer* v. *Hincks,* 113 Conn. 366, 370–71, 155 A. 508 (1931); such a preference cannot overcome contrary findings of fact by the trial court. In this case, the court expressly found that there was no way to ascertain the location of the defendant sellers' retained homestead and six acres. The court impliedly rejected the plaintiffs' claim that the parties intended to confer upon the plaintiffs the right to select the real estate to be excluded. With this factual basis, this case is indistinguishable from *Pigeon* v. *Hatheway,* 156 Conn. 175, 184–85, 239 A.2d 523 (1968), where we held that when "[t]he description of the excepted parcel in the option to purchase is palpably uncertain and indefinite, [the] result [is that] the general description of the land to be conveyed is uncertain and indefinite." Under the similar test of the Restatement (Second), Contracts § 131, comment e, the present option agreement is an inadequate memorandum because the writing is not one which "reasonably identifies the subject matter of the contract."[3] For these reasons, we agree with the trial court that the option agreement failed, because of its lack of certainty, to satisfy the requirements of the Statute of Frauds.

---

[3] 1 Restatement (Second), Contracts § 131 (1981) provides:

"§ 131. General Requisites of a Memorandum

"Unless additional requirements are prescribed by the particular statute, a contract within the Statute of Frauds is enforceable if it is evidenced by any writing, signed by or on behalf of the party to be charged, which

"(a) reasonably identifies the subject matter of the contract,

"(b) is sufficient to indicate that a contract with respect thereto has been made between the parties or offered by the signer to the other party, and

"(c) states with reasonable certainty the essential terms of the unperformed promises in the contract."

Comment e to this section states:

"*e. Subject matter.* A memorandum, like a contract, must be read in its context and need not be comprehensible to persons not familiar with the particular type of transaction. Without reference to executory oral promises, the memorandum in context must indicate with reasonable certainty the nature of the transaction and must provide a basis for identifying the land, goods or other subject matter."

This conclusion means that the plaintiffs cannot prevail on either their first or their second claim of error, and similarly forecloses their recovery on a theory of part performance. As we held in *H. Pearce Real Estate Co.* v. *Kaiser,* 176 Conn. 442, 443, 408 A.2d 230 (1979), the doctrine of part performance requires conduct that is " 'referable to and consistent with [an] oral agreement' " between the parties. In the absence of an underlying agreement, there is no basis for finding that "the party seeking enforcement, in reasonable reliance *on the contract and on the continuing assent* of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement." (Emphasis added.) 1 Restatement (Second), Contracts § 129 (1981). The trial court's express finding, with respect to the retained acreage, that "[t]he minds never met on which [six] acres were to be excluded from this sale" is a factual finding negating the presence of either an oral or a written contract.

In the absence of a binding option contract, we need not decide whether the plaintiffs acted properly in purporting to exercise their unenforceable option, the issue raised in the plaintiffs' third claim of error. Although the trial court noted that the plaintiffs had failed to tender the subdivision plan that was contemplated by the agreement, the court drew no express conclusions from that observation, basing its decision entirely upon the effect of the Statute of Frauds. Having decided that the Statute precluded enforcement of the option agreement under any circumstances, the court could logically have concluded that it would have been pointless to determine whether the nonexistence of the subdivision plan would have provided an alternate ground for denying the plaintiffs their claimed right to specific performance.

The court's conclusion about the unenforceability of the option agreement in its entirety is equally dispositive of the plaintiffs' claim that the court, in the exercise of its discretion, ought to have fashioned a modified decree conveying to the plaintiffs, with an abatement of the contract price, some diminished portion of the seventy-three acres comprising Snow's Farm. In the absence of a binding agreement, there was nothing for the court to modify. The plaintiffs mistake the extent of the parties' failure to agree when they focus only on the exclusion of the land transferred to Phyllis Snow.[4] The court properly refused to order specific performance of any kind of the option agreement between these parties.

The plaintiffs' final claim of error is, however, of greater moment. The plaintiffs maintain that, in the event the option agreement is found unenforceable, they are entitled to restitution of their payments of $16,000 to the defendants. The fact of these payments is undisputed. The trial court did not address this question, either in its memorandum of decision or in its judgment, presumably because the claims of law filed by the plaintiffs in the trial court addressed only their right to specific performance.

It is hornbook law that a party whose agreement is unenforceable under the Statute of Frauds or because of indefiniteness is generally entitled to restitution. 3 Restatement (Second), Contracts § 375 (1981); Dobbs, Remedies (1973) § 13.2. When a landowner relies upon the Statute of Frauds as a basis for repudiating his

---

[4] In their amended complaint, the plaintiffs asked that the conveyance by the defendants to Phyllis Snow, of property allegedly included within the option agreement, be declared null and void. On appeal, the plaintiffs do not dispute the trial court's finding that the conveyed property was excluded from the agreement. See footnote 1, supra. Rather, they claim that equity now requires "specific performance of the agreement with modifications to exclude the land described in Phyllis Snow's deed . . . ."

agreement, it is unjust to permit him to retain payments or services that he has received and to transfer nothing in return. 2 Palmer, Law of Restitution (1978) § 6.1, esp. pp. 5–6, and § 6.5. This principle is well established in our case law; see, e.g., *Misisco* v. *La Maita,* 150 Conn. 680, 683–84, 192 A.2d 891 (1963); *Anderson* v. *Zweigbaum,* 150 Conn. 478, 481, 191 A.2d 133 (1963); *Kearns* v. *Andree,* 107 Conn. 181, 185, 139 A. 695 (1928); *Somerville* v. *Epps,* 36 Conn. Sup. 323, 325, 419 A.2d 909 (1980); *Russo* v. *Christian,* 23 Conn. Sup. 442, 445, 184 A.2d 186 (1962); and that of other jurisdictions. See, e.g., *Kammert Bros. Enterprises* v. *Tanque Verde Plaza Co.,* 4 Ariz. App. 349, 365–67, 420 P.2d 592 (1967); *Wolf* v. *Malevani,* 343 So. 2d 949, 950 (Fla. App. 1977); *Kalivas* v. *Hauck,* 365 Mo. 923, 934, 290 S.W.2d 94 (1956); *McIntosh* v. *Borchers,* 201 Neb. 35, 36, 266 N.W.2d 200 (1978); *Campbell* v. *Northwestern National Life Ins. Co.,* 573 S.W.2d 496, 498 (Tex. 1978); *In Matter of Estate of Lade,* 82 Wis. 2d 80, 85, 260 N.W.2d 665 (1978).

It is no answer to the claim for restitution to argue, as do the defendants, that the option agreement allowed them to retain payments made if the option was not exercised. Having previously relied upon the unenforceability of the option agreement to defeat the plaintiffs' claim for specific performance, the defendants cannot now invoke the provisions of that unenforceable agreement as an absolute bar to the plaintiffs' claim of unjust enrichment. Such a claim must be adjudicated "[w]ith no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable." *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 564–65, 244 A.2d 404 (1968). The plaintiffs' claim in restitution is not a claim arising out of an express or an implied contract but invokes instead an obligation, independent of contract, "based

on equitable principles to operate whenever justice requires compensation to be made." *Brighenti* v. *New Britain Shirt Corporation,* 167 Conn. 403, 407, 356 A.2d 181 (1974).[5]

It is arguably a better answer that the plaintiffs have waived their claim to restitution by inarticulate pleading in the trial court. The plaintiffs' complaint is hardly a model of good pleading, and their formal claims of law invoke only general equitable principles without specifically referring to restitution of payments made in reliance on the option agreement. The trial court cannot therefore be faulted for having failed to perceive the plaintiffs' residual restitutionary claim.

In the interests of justice, however, we believe that this case should be remanded to the trial court so that the plaintiffs may have an opportunity to establish the extent to which the defendants have been enriched by their receipt of $16,000. We express no opinion on whether there has been any unjust enrichment. We recognize that the defendants may have suffered some loss because, while the enforceability of the option agreement was unresolved, their property was necessarily not fully marketable. Unjust enrichment requires a factual examination of the circumstances and of the conduct of the parties, and that is not a task for an appellate court. Both parties should now be afforded a final opportunity to supplement the trial record and to present argument specifically directed to the unresolved issue of restitution. After a hearing on whether the plaintiffs have made out a case of unjust

[5] These plaintiffs present a stronger case for the invocation of restitutionary principles than that of a plaintiff in default who seeks to recover payments made toward the purchase of land. We have recognized, in *Vines* v. *Orchard Hills, Inc.,* 181 Conn. 501, 504, 435 A.2d 1022 (1980), that such a claimant may, under the proper factual circumstances, recover his payments.

enrichment, the trial court will have to determine whether the judgment previously rendered should be set aside in whole or in part.

The case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.