[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both appeals relate to administrative applications relating to the Appellants plan to subdivide an approximately 280 acre parcel of land in Somers, Connecticut into a 98 lot development.
In case number 46152 the appeal is from the October 11, 1990, Somers Planning Commission decision denying his subdivision application without prejudice. Notice of the decision was published on October 16, 1990 and the appeal was timely filed on October 26, 1990. The appeal was subsequently amended by order of Court over respondents' objection.
Docket number 44960 involves the appellant's appeal from the decision of the Somers Conservation Commissioner denying an application to conduct "regulated activities," [as defined in Conn. Gen. Stat. Sec. 22a-38 (13)] on the 270 acre proposed development. CT Page 4417
In the interests of judicial economy both appeals were heard on the same date. Factual issues of aggrievement common to both cases are dispositive of the appeals.
"`It is well settled that the question of aggrievement is a jurisdictional one and that claims of aggrievement present an issue of fact for the determination of the trial court with the burden of proving aggrievement resting upon the plaintiffs who have alleged it.' Pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of the appeal." Bakelaar v. West Haven, 193 Conn. 59, 65, 475 A.2d 283 (1983). Owners of the land effected by a decision of the zoning board are aggrieved by the action of the board. Bossert Corporation v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39 (1968). The court in Goldfeld v. Planning Zoning Commission, 3 Conn. App. 172,486 A.2d 646 (1985) held that an appellant, with an option to purchase land, was aggrieved by an adverse decision of the zoning board with regard to that parcel of land. Goldfeld, p. 176, See also Baumert v. City of Hartford Zoning Board,7 CSCR 364 (February 27, 1992, Schimelman, J.).
The Appellant claims that he is aggrieved by the Commissions' decisions as the owner of an option to purchase the land in question. The Appellant, Richard A. Pollio, testified and submitted copies of the various agreements at the hearing, to document his aggrievement. The evidence showed that he originally signed an option to purchase the property in question on April 28, 1988, and this option ran through April 30, 1990. (Plaintiff's Exhibit G). The evidence further showed that the plaintiff entered into a series of extensions of the option contract. (Plaintiff's Exhibits H 
I). The first extension, dated April 26, 1990, extended the plaintiff's option to purchase the property until June 30, 1990. (Plaintiff's Exhibit H, top portion only). The second extension purportedly extends the plaintiff's option until December 30, 1991. (Plaintiff's Exhibit H, bottom portion only). The second extension is not dated and the plaintiff testified that it was executed in December of 1990, but was unsure of the specific date. Neither the second nor third extensions are signed by the plaintiff. (Plaintiff's Exhibit H). The fourth extension, dated April 18, 1991, extended the plaintiff's option until April 30, 1992. (Plaintiff's Exhibit I).
The respondents make two arguments as to why the plaintiff is not aggrieved. The respondents first claim that the option contract and the extensions fail to meet the requirements of the statute of frauds and therefore the plaintiff's option is invalid. The defendants' second CT Page 4418 argument is that if the court finds that the option contract and subsequent extensions are sufficient to satisfy the statute of frauds, there was a five month period of time when the plaintiff's option was not in force and therefore the plaintiff was not continuously aggrieved.
I. Statute of Frauds
The defendants first claim that the option contract does not meet the requirements of the statute of frauds. Connecticut has codified the statute of frauds in General Statutes sec. 52-550, which sets forth the circumstances that make a writing necessary, stating in pertinent part:
 No civil action may be maintained in the following cases unless the agreement, or memorandum of the agreement, is made in writing and signed by the party, or agent of the party, to be charged: . . .(3) upon any agreement for the sale of real property or any interest in or concerning real property. . .
General Statutes sec. 52-550.
The terms of the option contract which the respondents claim do not meet the statute of frauds are as follows:
 A Closing [sic] on or before April 30, 1990. Consisting of 281 acres, more or less, at a minimum price of $10,000.00 per acre; the total purchase price being a minimum of 2.81 million dollars. All costs shall be paid by Purchaser.[1]
Plaintiff's Exhibit G. The appellant provided $1.00 as consideration for the option which is to be applied to the purchase price upon acceptance by the owner. (Plaintiff's Exhibit G). The document is signed by the appellant and the seller. (Plaintiff's Exhibit G).
"Option agreements relating to interests in real property fall within the Statute [of Frauds]." Montanaro Bros. Builders. Inc. v. Snow, 190 Conn. 481, 485, 460 A.2d 1297
(1983). "In order to satisfy the statute of frauds, an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof, or from a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a CT Page 4419 complete agreement." Carta v. Marino, 13 Conn. App. 677, 680,538 A.2d 1091 (1988).
The contract is signed by the party to be charged, namely the plaintiff. The subject of the sale is the 281 acres of land, more or less, owned by Howard Whitaker, Jr., as found in the Somers' Land Records Volume 41 pages 35-36, and Volume 41 page 304. The terms of the sale are, closing to take place on or before April 30, 1990, sale price of $10,000 per acre for a minimum price of $2.81 million, and the costs to be paid by the purchaser. Lastly, the parties to the contract are the plaintiff, Richard Pollio, as the purchaser, and Howard Whitaker, Jr. as the seller. The option contract, Plaintiff's Exhibit G, has met the requirements of the statute of frauds. The appellant had options to purchase the subject premises during the period from April 28, 1988, to April 30, 1990.
The respondent-appellees next claim that the extensions, Plaintiff's Exhibits H I, fail to meet the requirements of the statute of frauds. With regard to the last extension, Plaintiff's Exhibit I, it is identical to the original option contract, Plaintiff's Exhibit G, and therefore, for the reasons stated above, meets the requirements of the statute of frauds. The second and third extensions, as set forth in Plaintiff's Exhibit H, present a different problem.
The second extension reads in its entirety:
Apr. 26, 1990
Mr. Richard Polio
 This is to confirm our tel. conversation of the other night.
 I am willing to extend your option on my acreage in Somers (282 a) from Apr. 30, 1990 to June 30, 1990 Yours Howard Whitaker, Jr. /s/
Plaintiff's Exhibit H (top portion only). The plaintiff did not sign the extension but testified that this extended his option until June 30, 1990. The plaintiff further testified at the hearing that no consideration was given for the extension.
The third extension reads in its entirety:
This original agreement is extended to Dec. CT Page 4420 30, '91 with all subsequent understandings. Howard Whitaker, Jr. /s/
Plaintiff's Exhibit H (bottom portion only). The third extension is not signed by the plaintiff and is not dated. Furthermore, the plaintiff testified that no consideration was given for this extension. During cross-examination by defense counsel, the plaintiff testified that the third extension was executed some time in December of 1990. The plaintiff further testified on cross-examination that the December 30, 1991 date was originally December 30, 1990, but was changed by him because December 30, 1990 had already passed.
The defendants make several claims as to why these extensions do not meet the statute of frauds. The first claim is that no new consideration was given for either extension. The second claim is that the plaintiff, as the party to be charged, did not sign either extension. Lastly, the defendants claim that the terms contained in either of the extensions are not sufficient to satisfy the statute of frauds. Whether the second and third extensions meet the statute of frauds is questionable but even if sufficient they do not establish continuous aggrievement.
II. Continuous Aggrievement
The second claim of the respondents is that the appellant's option lapsed for a period of time and therefore the appellant was not continuously aggrieved during the course of his appeals. The facts on which the defendants rely stem from the appellant's testimony at the hearing and revolve around the second and third extensions.
At the hearing, Mr. Pollio testified that the third extension was executed some time in December of 1990, but was unsure of the specific date. The second extension extended the option to June 30, 1990. (Plaintiff's Exhibit H). The defendants claim that from the period of June 30, 1990, until the time the third extension was executed in December of 1990, the plaintiff's option had lapsed. Therefore, the defendants claim that the appellant was not continuously aggrieved during the pendency of the appeals and the appeals should be dismissed.
"To maintain the appeal, the plaintiffs must (1) have a specific, personal and legal interest in the subject matter of the appeal; (2) sustain that interest throughout the course of the appeal; and (3) be able to obtain some practical benefit or relief." Craig v. Maher, 174 Conn. 8, 9, 381 A.2d 531
(1977) (emphasis added). In Goldfeld, supra, the court CT Page 4421 discusses the need for continuous legal interest throughout the course of the appeal. In Goldfeld, the plaintiff had an option to purchase a piece of property. The option was allowed to lapse for a four month period during the appeal. The option was revived but lapsed again six weeks before the court rendered judgment in the case. Goldfeld, supra, 177. The court found that the appellant did not sustain his interest in the land throughout the course of the appeal and therefore was not continuously aggrieved and dismissed the appeal. Goldfeld, supra, 177-8.
The appellant in the case at bar is in the same situation as the appellant in Goldfeld, supra. The plaintiff initiated one of the appeals in May of 1990 and the other in October of 1990. Even assuming the second and third extensions meet the requirements of the statute of frauds, the plaintiff's extension lapsed from June 30, 1990, to some time in December of 1990, a period of at least 5 months. The plaintiff was not continuously aggrieved during the pendency of these appeals and therefore the appeals should be dismissed.
The expiration of the option on April 30, 1992 makes these cases indistinguishable from Goldfield, supra.
In both appeals the Appellant has failed to prove aggrievement; the Court is without jurisdiction and the appeals are ordered dismissed.
BY THE COURT HON. ROBERT McWEENY SUPERIOR COURT JUDGE