[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is a partition action brought by an owner of an individual one-tenth interest in a family farm in North Branford. The plaintiff, Mathia Cecarelli, is the widow of one of the sons of Francesco Cecarelli. The defendants are the surviving brothers and sisters of the plaintiff's deceased husband, who each own a one-tenth share of the acreage — Anthony Cecarelli, Joseph Cecarelli, Nelson Cecarelli, Thomas Cecarelli, Louis Cecarelli, John Cecarelli, Helen Burdacki, and Clara DiBenedetto — and the four children of another deceased brother, who each own a fourth of a one-tenth interest that originally belonged to their father. The latter defendants are Edward Cecarelli, Kathleen Secondino, Richard Cecarelli, and Franklin Cecarelli, Jr. The plaintiff and the defendants hold the real estate as tenants in common, with undivided interests in this family farm.
On December 3, 1992, this court ordered a partition by division of the real property, upon the stipulation of the parties. Only the plaintiff seeks partition, and the remaining tenants in common seek no allocation of specific portions of the property but intend to continue to hold the remainder of the property as tenants in common.
The parties are in agreement that the approach to be taken by the court is to designate or sole ownership by the plaintiff a discrete portion of the land for sole ownership by the plaintiff. There are three issues in dispute:
1. Whether the plaintiff is entitled to a one-tenth interest in the entire farm or whether she is entitled only to such an interest in the tract remaining after five of the co-owners are each allocated a one-acre lot;
2. The value of the acreage as a whole;
3. The location and size of the area to be allocated for sole ownership by the plaintiff. CT Page 341
The farm in question is composed of four distinct parcels: Parcel I — 52 acres, bordered on the south by the Old Post Road, on the east by Maltby Lane, and on the north by Line Street. Approximately 17 acres (33%) is likely to be adjudicated to be wetlands, as the area contains two ponds. Several acres along the Old Post Road are occupied by the old farmhouse and farm buildings. The remainder consists of open fields under cultivation, except for two house lots that were carved out on Maltby Lane. One of these lots is the sole property of the plaintiff, who inherited her husband's share upon his death. The other, which abuts the plaintiff's lot to the south, is owned by Joseph and Beverly Cecarelli. Both of these lots were deeded by the siblings first to a "straw" and then to the two brothers and their wives during the 1950's so that they could have homes on the family farm.
Parcel II — approximately 26 acres on the other side of the Old Post Road from Parcel I. This irregularly shaped parcel has approximately 900 feet of frontage on Old Post Road and 200 feet of frontage on the north side of Middletown Avenue. Approximately 20 acres are tilled. The parcel is broken on the Old Post Road side by two lots, one conveyed to Nelson Cecarelli in 1952; the other conveyed to Anthony and Doris Cecarelli in 1958. This parcel slopes down to Middletown Avenue.
Parcel III — approximately seven acres with 800 feet of frontage on the south side of the Old Post Road and 900 feet of frontage on the north side of Middletown Avenue. A small stream bisects this parcel and creates an area likely to be adjudicated wetlands.
Parcel IV — 65 acres of farm land reachable by a right of way over a bridge crossing a stream and land owned by others. This parcel includes approximately 45 acres of tillable land and 20 acres of woodland.
Appraisers hired by the parties agree that the highest and best use of the land in Parcels I, II and III is as residential house lots. The land lies in the R-40 zone, in which the minimum lot size is 40,000 square feet and in which the minimum street frontage is 125 feet per lot.
The Area to be Divided CT Page 342
The defendants take the position that the plaintiff is not entitled to one-tenth of the total acreage described above but only to one-tenth of the area remaining after a building lot is allocated to each of five of the defendants. The defendants assert that the children of Francesco Cecarelli agreed that each of them should receive a lot from the family farm and that the plaintiff and her husband, Joseph Cecarelli and his wife, and Anthony Cecarelli and his wife each received lots. The defendants assert that Edward, Franklin, Richard Cecarelli and Kathleen Secondino jointly received a lot due to their father pursuant to this agreement. The plaintiff denies knowledge of the terms of any such agreement.
The terms of this alleged agreement were not clearly identified in testimony before this court. The location of the lots to be conveyed was not established, nor was the time of conveyance. The plaintiff acknowledges that her husband and she received a house lot carved from the family farm in 1959, however, she denies having been a party to any agreement to convey any lots to others. The defendants assert that her inheritance of her husband's one-tenth share of the family farm is "subject to the agreement" to convey lots to other siblings.
Section 52-550 C.G.S., the statute of frauds, provides that no civil action may be maintained upon an agreement for the sale of real property or any interest in or concerning real property unless the agreement or a memorandum of the agreement is in writing, signed by the party or agent of the party to be charged. To reduce by five lots the total acreage in which the plaintiff has a one-tenth share would be to enforce an unwritten agreement.
The defendants urge that because a lot was conveyed by the siblings to the plaintiff and her late husband, the alleged contract has been partly performed, such that the statute of frauds does not apply. See Ubysz v. DiPietro, 185 Conn. 47, 54
(1981). Whether or not part performance has been established, the issue remains as to what is to be enforced.
Under established principles of contract law, to be enforceable an agreement must be definite and certain as to its terms and requirements. Dunham v. Dunham, 204 Conn. 303, 313
( 1987); Augeri v. C. F. Wooding Corp., 173 Conn. 426, 429-30
(1977), 1 Restatement (Second) Contracts (1981) 33. The agreement invoked by the defendants is indefinite in several respects. It was unclear to the court whether its terms were CT Page 343 that a lot was to be conveyed only to siblings who desired to live on the family farm, as seemed to be the situation as to four of the lots conveyed, or whether the agreement was to convey a lot on demand. It is undisputed that the alleged agreement is indefinite as to the location, value and dimensions of the lots to be conveyed. Such indefiniteness has been held to defeat an effort to enforce an alleged oral agreement to convey an interest in land. Dunham v. Dunham, supra, at 312-314; Montanaro Bros. Builders, Inc. v. Snow, 190 Conn. 481, 486 (1983); Pigeon v. Hatheway, 156 Conn. 175, 182 (1968). This court lacks any basic for determining that particular lots should be conveyed to any of the defendants. Nothing in the alleged agreement supplies the court with the means to determine the location or value of the land to be conveyed, and the court cannot supply contract terms not proved to have been agreed to by the parties to the alleged agreement. 1 Restatement (Second) Contracts (1981) 33; Bank of Boston, Connecticut v. Schlesinger, 220 Conn. 152, 159 (1991); Ruscito v. F. Dyne Electronics Co., Inc., 177 Conn. 149, 170
(1979).
The court concludes that any agreement to convey lots to any of the defendants is unenforceable against the plaintiff, and that the area to be divided in this partition action is the whole area of Parcels I-IV described above.
Division
In their pretrial brief, the defendants assert the existence of a constructive trust affecting 5.5 acres of the land at issue. The defendants have not plead the existence of a constructive trust but have merely denied the allegation that the parties each have a one-tenth undivided interest in the property at issue. Section 164 P.B. provides that "advantage may be taken, under a simple denial, of such matters as . . . title in a third person to which the plaintiff sues upon or alleges to be his own."
Assuming that a denial of the plaintiff's allegation of ownership of an undivided one-tenth interest in the land described was sufficient to permit introduction of the claim of creation of a constructive trust as to part of the acreage, the issue is whether the defendants have proven the existence of a constructive trust that is not affected by the statute of frauds. A constructive trust arises where a person who holds title to a property is subject to an equitable duty to convey it to another on the ground that he or she would be unjustly enriched if CT Page 344 permitted to retain it. Brown v. Brown, 190 Conn. 345, 349
(1983). A constructive trust may arise where the acquisition of the property was not wrongful. 5 Scott on Trusts 462.3 (1989). To determine whether the plaintiff holds her one-tenth interest subject to a constructive trust applicable to 5.5 acres, the court must determine whether the circumstances at the time the plaintiff and her husband received their one-tenth interest in the family farm were such that they held part of their share in trust. 5 Scott on Trusts 462.4; Cooper v. Cavallaro, 2 Conn. App. 622,626 (1984).
Francesco Cecarelli deeded his farm to his children in 1952 (Ex. 1). Thomas Cecarelli testified that the brothers and sisters determined thereafter that any of them who wanted to live on the farm should be able to do so, and that the co-owners conveyed lots to various of the brothers and sisters pursuant to that plan. The testimony did not establish that the eventual conveyance of lots to siblings was part of the intention of Francesco Cecarelli when he granted a one-tenth share to Andrew Cecarelli, or that the transfer to Andrew in 1952 was conditional on compliance with such a plan. Indeed, the transaction which the defendants contend created the constructive trust was not the transaction by which Andrew acquired his one-tenth interest in the whole farm, but rather the transaction in which he acquired his own building lot in 1959. (Defendants' Post Trial Brief, P.8-9). Since Andrew was already a one-tenth owner of the whole farm at that juncture, the defendants are, in fact, attempting to enforce the alleged oral contract to convey lots to siblings in the future, and not any obligation that accompanied Andrew's acquisition of his one-tenth interest. The court finds that it has not been proven that Andrew acquired his one-tenth interest subject to a constructive trust, and the alleged oral contract has been ruled unenforceable pursuant to the statute of frauds.
Valuation
Depending on the extent of wetlands and the method of subdivision for roads, the overall acreage in parcels I, II and III could be subdivided into approximately 63 lots.
The appraisers disagreed considerably as to the value of the lots that could be created from Parcels I, II and III. The court is persuaded that the proper method of arriving at a value for these parcels is to hypothesize their subdivision for house lots and to arrive at an overall value for each parcel. The value of CT Page 345 Parcel IV should then be added, and the plaintiff should be awarded an area worth one-tenth of the resulting sum. Some of the lots that can be created from Parcels I-III are clearly worth more than others that could be created because of the presence of ponds, streams and surrounding wetlands. Lots could be created from existing frontage that would have a greater value than lots that could be created only upon subdivision of a large parcel, accommodation for wetlands, and building of roads, activities that would necessitate expense that would affect value.
Upon consideration of all of the available information concerning sales of raw land and single lots in the area, the opinions of the appraisers, and the impact on value of the likely cost of development, the court finds that the first three parcels have a fair market value as follows:
Parcels I and II-56 lots, total value at $29,000 per lot $1,624,000.
Parcel III-5 lots, total value at $75,000 per lot $375,000.
Both of these determinations have taken into account the considerations of cost of development and value of finished lot in the area as it affects the value of bulk acreage.
Since Parcel IV has road access via a right of way over the property of another, the plaintiff's appraiser is likely to be mistaken in his assumption that the property could be subdivided to create two large lots. Doing so would be likely to be subject to the objection that a burden was being created by increased use of the right of way to serve a second residential lot. See Kuras v. Kope, 205 Conn. 332, 344 (1957) (use of prescriptive easement must not unreasonably burden the servient tenement); 5 Restatement Property (1944) 479-480.
Accordingly, the court adopts the valuation for Parcel IV advocated by the defendants' appraiser, $260,000.00.
The court finds that the total value of the jointly held property is $2,259,000.00. The plaintiff is entitled to a one-tenth share of this value, or acreage worth approximately $225,900.00.
The parties have not provided the court with a proposed layout of lots over the whole acreage jointly owned, and it is CT Page 346 therefore not possible for the court to describe by metes and bounds a particular tract to be conveyed to the plaintiff as her separately owned property. Witnesses for both the plaintiff and the defendants testified that the acreage in Parcel III is the most easily developed because saleable lots can be created without the necessity of building roads. Accordingly, the court finds it equitable to assign to the plaintiff three of the potential five lots that can be created from Parcel III. These lots shall have as their western boundary the land now or formerly of Mary Ellen and Michael DiLella, such that they include part or all of the wetlands in Parcel III, and they shall be configured in such a way that at least two buildable lots remain in the parcel jointly owned by the defendants. The plaintiff shall present to the court by February 10, 1993 a proposed description of the portion of Parcel III to be deeded to her. A copy of the proposed legal description of the three-lot area shall be simultaneously provided to the defendants. The court will hear any objection to the proposed metes and bounds of the three lots to be conveyed to the plaintiff on February 26, 1993 at 2:00 p.m. in Courtroom 4D. All costs associated with surveys or other services necessary to establish the dimensions of the area to be conveyed to the plaintiff pursuant to this order shall be borne by her.
Beverly J. Hodgson Judge of the Superior Court