[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Here, the plaintiff, New Haven Savings Bank ("Bank"), has filed a motion for summary judgment, on both counts of the counterclaim filed against it by the defendant, Marek Brothers, Inc.'s ("Marek"), a defendant in the original action.
There is no dispute that Common Construction Co., Inc., another original defendant, executed an open-ended construction mortgage ("first mortgage") in favor of the Bank, in order to secure financing for the construction of an apartment complex ("the project"). Common Construction had contracted with a subcontractor, who in turn contracted with Marek for the installation of dry wall in the project. There is no dispute Marek began work on the project, did not receive any progress payments as required by its contract with Common Construction, CT Page 10537 and that Marek completed the work and filed a mechanic's lien.
The bank initiated the present action to foreclose the first mortgage and Marek was named as a defendant, along with other mechanic's lien holders. Thereafter, Marek filed its counterclaim. The court has entered a judgment of strict foreclosure in favor of the bank and determined that the Common Construction owed $6,120,827.50 to the Bank, and that the property was worth $1,700,000.00.
Marek's counterclaim asserts claims under the doctrine of promissory estoppel and unjust enrichment. It alleges in the first count that it continued to expend labor and material on the project, after Common Construction failed to make progress payments, because of representations made by the Bank's officer's that the project was financially sound and that Marek would be paid following the completion and sale of the project. Marek also alleges in the second count that the Bank was unjustly enriched by Marek's labor and materials, because the completion of the drywall allowed the other contractors to complete the painting, carpeting, and trim, and thus allowed the bank to foreclose upon completed apartments rather than upon an unfinished wooden frame.
The bank has moved for summary judgment on both counts of Marek's counterclaim. In support of its motion, the bank has submitted copies of the mortgage note, mortgage deed, commitment letter, an affidavit of Richard Johnson, Vice President of the Bank's Commercial Lending Department, a copy of Marek's mechanic's lien, a copy of the bond in substitution of the mechanic's lien, and a copy of the judgment of strict foreclosure. Marek has submitted a certified copy of the deposition of the Bank's vice president of commercial lending, Richard Johnson, and the affidavit of Marek's president, Patrick A. Trojanowsky.
 Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together CT Page 10538 with the evidence disclosing the existence of such an issue. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.
(Citations omitted; internal quotation marks omitted.) Connell v.Colwell, 214 Conn. 242, 246-47, 571 A.2d 116 (1990). A trial court may rely on pleadings and depositions in determining a motion for summary judgment. Esposito v. Wethered, 4 Conn. App. 641,644, 469 A.2d 222 (1985).
1. Count One — Promissory Estoppel.
There is a genuine issue whether any representations were made to Marek by the Bank's officers. The Bank argues even if they were made, that it is entitled to judgment on the first count as a matter of law because its mortgage had priority over Marek's lien, the bank owed no duty to Marek as a junior encumbrancer, and Marek had a pre-existing duty to install the drywall.
Marek argues in its opposition to summary judgment that it is claiming recovery on the theory of promissory estoppel. Marek claims that it contacted the Bank's commercial lending vice-president Richard Johnson in order to determine if the project was still financially viable and would be completed, following the subcontractor's failure to make progress payments for the work Marek had performed on the project. Marek claims that Johnson made representations to it that there was sufficient money in the project to insure that all contractors would be paid following completion of the project, that Marek would be paid following the sale, and that Marek reasonably relied on these representations to its detriment.
The Connecticut Supreme Court
 has recognized . . . the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor; see Restatement (Second), Contracts 90 (1973). . . . Section 90 of the Restatement Second states that under the doctrine of promissory estoppel "[a] promise which CT Page 10539 the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all.
(Additional citations omitted; additional internal quotation marks omitted.) D'Ulisse-Cupo v. Board of Directors of Notre DameHigh School, 202 Conn. 206, 213, 520 A.2d 217 (1987).
The Bank argues that it owed no duty to Marek as a junior encumbrancer and, therefore, Marek's reliance on any alleged representations of the Bank's officers was unreasonable as a matter of law. The Bank cites to Connecticut Bank and Trust Co.v. Carriage Lane Associates, 219 Conn. 772, 595 A.2d 334 (1991), in support of this proposition. In that case, the junior mortgagor sought to limit the debt claimed by the senior mortgagee in a foreclosure action to the amount that would have been advanced to the mortgagor had the senior mortgagee complied with the terms of the mortgage. Id., 776. The court found that a first mortgagee owed no duty to a junior encumbrancer, other than the duty of good faith, to assure that the funds advanced by the first mortgagee were used in accordance with the terms of the mortgage and, therefore, the amount of debt was not reduced.
The encumbrancers in Carriage Lane Associates were mortgagees, and the junior mortgagee's claimed recovery was on the basis of a the parties' mortgage interests in the encumbered property. However, in the present case, Marek is not alleging any right of recovery based on the competing rights between encumbrancers, but on the affirmative representations made by the Bank's officers and Marek's reliance thereon. The court finds the Bank is not entitled to judgment as a matter of law on this ground.
The Bank also argues that it is entitled to judgment as a matter of law on the first count of the counterclaim because Marek had a pre-existing duty to perform the drywall installation by virtue of its contract with Common Construction's CT Page 10540 subcontractor. The Bank notes that "[t]he doctrine of estoppel has no application in cases where the representations or conduct which are claimed to give rise to it tend only to induce the party to do some act which he is already legally bound to do." 31 C.J.S., Estoppel, § 72. However, as argued by Marek, the subcontractor's failure to make progress payments would constitute a material breach of the contract for the installation of the drywall and, therefore, Marek would have been under no contractual obligation to continue working on the project at the time of the alleged discussions between Marek and Mr. Johnson. See Sillman Co. v. S. Ippolito Sons, Inc., 1 Conn. App. 72, 75,467 A.2d 1249 (1983) (failure to make progress payments when due is a substantial breach of contract rendering contract nugatory).
Marek submits the affidavit of its president, Patrick A. Trojanowsky, wherein he swears that Marek made proper requests for progress payments after performing the required work, and that these payments were not received. In addition, he swears that he contacted Richard Johnson, following the subcontractor's breach of the drywall subcontract, and was informed by Mr. Johnson that the project was "in good shape" and that the Bank would fund the shortfall. (Trojanowsky Affidavit, ¶ 6.) In addition, Marek submits the certified deposition transcripts of Richard Johnson, wherein Johnson states that he spoke with "the drywall contractor," who informed Mr. Johnson that he had not been paid by the subcontractor and questioned if the project was to be finished and if he would be paid. Mr. Johnson also stated that he informed the drywall contractor that there was sufficient money in the project and that, following the contemplated sale, everyone would be paid.
In these circumstances, a material issue of genuine fact exist regarding whether representations were made to Marek by the Bank, through its officers, that Marek would be paid by the bank following the completion and sale of the project, and whether such reliance was objectively reasonable. D'Ulisse-Cupo v. Boardof Directors of Notre Dame High School, supra, 202 Conn. 213. Therefore, the Bank's motion for summary judgment on the first count of Marek's counterclaim should be and is denied.
2. Count Two — Unjust Enrichment.
In count two of the amended counterclaim, Marek alleges that the Bank became title holder of the project property, and was unjustly enriched by virtue of the labor, equipment and materials CT Page 10541 invested by Marek in the project in reliance on the Bank's representations.
 The right of recovery for unjust enrichment is equitable, its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.
(Citations omitted; internal quotation marks omitted.) Polverariv. Peatt, 29 Conn. App. 191, 200-01, 614 A.2d 484 (1992).
"Unjust enrichment requires a factual examination of the circumstances and of the conduct of the parties . . ." MontanaroBros. Builders, Inc. v. Snow, 190 Conn. 481, 490, 460 A.2d 1297
(1983). "The burden of proving unjust enrichment [i]s placed on the plaintiff. . ." Garwood Sons Construction v. Centos,8 Conn. App. 185, 188, 511 A.2d 377 (1986), citing Montanaro Bros.Builders, Inc. v. Snow, supra, 190 Conn. 490.
The Bank argues that it is entitled to judgment as a matter of law because it disbursed a total of $4,000,000.00 to Common Construction, which Common Construction failed to repay. The Bank argues that the foreclosure of the property, which was valued at $1,700,000.00, constitutes payment, thus implicating the general rule that an owner's payment to a contractor for services performed by the subcontractor precludes the subcontractor's action against the owner for unjust enrichment. See ProvidenceElectric Co. v. Sutton Place, Inc., 161 Conn. 242, 246,287 A.2d 389 (1971); see also Garwood Sons Construction v. Centos, supra, 8 Conn. App. 188.
The copy of the judgment of strict foreclosure submitted by the Bank in support of summary judgment indicates that the Bank advanced proceeds totaling $6,112,375.50 to Common Construction for the construction of the project, in accordance with the mortgage. Following the judgment of strict foreclosure, the Bank took title to the property, which had a fair market value of CT Page 10542 $1,700,000.00. Although the Bank has submitted evidence indicating that it foreclosed its mortgage on property having a fair market value less than the original debt secured by the mortgage, there is some evidence indicating that Marek completed its work based upon promises, not fulfilled, by the bank. Therefore, the court finds that a material question of fact exists regarding the issue of whether the bank unjustly did not pay Marek for the value of the services performed by Marek and, accordingly, the motion for summary judgment on the second count should be and is denied.
/s/ McDonald, J. McDONALD