[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO DISCHARGE LIS PENDENS
I
The defendant Cadwell Hoerle has filed an application to discharge a lis pendens filed in connection with an action for specific performance and damages brought by the plaintiff Levesque Builders, Inc.
The facts introduced at the hearing reveal that in late 1990, Mr. Jean R. Levesque, president of the plaintiff, was contacted by the Cadwell Hoerle's son in connection with the purchase of a parcel of land in New Hartford, Connecticut. A meeting was arranged at the site in April, 1991 between the parties herein, and the defendant's real estate agent, Heather W. Braddock, concerning the sale of the defendant's 76 acre parcel. Mr. Levesque testified that he did not wish to purchase the entire parcel and at a subsequent meeting, he was offered 36 acres plus 2 building lots. On May 26, 1991, a contract was prepared by Ms. Braddock for the 36 acres and 2 lots and was more fully described on a map entitled, "36 plus Acres Sabolick Rd (Rear) and (2) Approved building lots shown as 7+13 on Preliminary Map by Whitney Associates dated Sept. 1990 New Hartford 06057." (Exhibits 1 and 2).
The parties signed the contract which included a purchase price of $110,000, a deposit of $1000, and a number of conditions including the requirement that the seller construct a new road to his other land. Mr. Levesque testified that he "needed something to show what he was getting and he received a copy of the above referenced map. "Mr. Levesque tendered his check of $1000 (which was cashed); the parties never had a closing.
On January 29, 1993, Lot seven was sold with the consent of the plaintiff for $45,000.00. In February 1993, a new contract was prepared by Ms. Braddock with the same parties for "36+ acres CT Page 6271 plus (1) approved building lot (know (sic) as lot #6)." This contract referred to a new map entitled "Open land at end of finished road (Hidden Hill Rd) drawn by Empire Associates Dave Whitney dated June 1991." The purchase price was reduced to $65,000 with a $1,000 deposit and the contract also contained a number of conditions including one that indicated it was "subject to seller's attorney review and redefinition of terminology within (sic)." It also stated that "this agreement supersedes previous agreement between Cadwell Hoerle and John R. Levesque D. B. A. Levesque Builders, Inc." (sic). Mr. Levesque indicated that Mr. Hoerle requested that he enter into the new contract as lot seven had been sold. Mr. Levesque never received a copy of the second map indeed the testimony indicated that the map never existed. Mr. Levesque purchased lot six in March 1993 for $35,000 and the parties engaged in discussions over the next several months to consummate the closing of the remaining land. At some point, the parties were unable to reach an agreement and the present litigation commenced with the plaintiff placing a lis pendens on the subject property. The defendant has now moved to discharge the lis pendens.
 II. A.
A notice of lis pendens is appropriate "where the pending action will in some way, either directly or indirectly, affect the title to or in an interest in real property. . . ." Garcia v.Brooks street Associates, 209 Conn. 15, 22 (1988). General Statutes §§ 52-325a and 325b allow a property owner to challenge the validity of a lis pendens with the plaintiff having the burden of proof to establish that there is probable cause. SeeDunham v. Dunham, 217 Conn. 24, 35-37 (1991). A probable cause hearing is not a trial on the merits; the plaintiff need not establish that he will prevail, only that there is probable cause to sustain the validity of the claim. Village Linc Corporation v.Children's Store, Inc., 31 Conn. App. 652, 657 (1993). Probable cause is a flexible common sense standard. Id. 657.
 B.
1.
The defendant's central argument is that the contract between the parties fails to comply with the statute of frauds, General CT Page 6272 Statutes § 52-550, and thus, is not enforceable. He maintains that this contract fails because there is no "reasonable identification of the property to be sold."
This argument has several components. First, the defendant argues that the May 26, 1991 contract was unenforceable because the southerly boundary line was believed to be the centerline of the electric company right of way when a later survey (exhibit 5) revealed that the property line was actually the southerly boundary of the right of way. In addition, the defendant claims that there is a small piece to the south of the right of way which is not shown on the map. The defendant also contends that even if this first agreement could be deemed enforceable, it was superseded by the second (February 3, 1993) agreement which referred to a non-existent map. The defendant finally claims that there was confusion about four acres at the easterly edge; that the full acreage never totaled 36 acres; and that the parties were never able to agree on a description.
2.
The defendant relies on Montanaro Bros. Builders v. Snow,190 Conn. 481 (1983) as support for his argument. The issue in that case was whether an option contract to purchase seventy three acres less a house lot and six acres of land was definite enough to satisfy the statute of frauds. The purchaser was charged with preparing a survey and a subdivision plan which delineated the homestead and the six acres. The trial court held, and the Supreme Court affirmed, that the "option agreement was rendered unenforceable because of the uncertainty in its description of the retained homestead and six acres." Id., 485.
Montanaro does not control the present application. AS mentioned, the only issue before this court is whether the plaintiff has established probable cause to sustain the validity of his claim. A review of the evidence indicates it was the defendant and his agent who contacted, offered, described, and showed the subject parcel. The description as displayed in the September 1990 map is surely sufficient to describe the subject of the sale. This map, moreover, is consistent with the earlier 1986 survey prepared for the property (exhibit 8). While neither party offered any deeds into evidence, it is quite apparent that both the 1986 and 1990 maps show existing iron pins and other natural landmarks on the northerly and easterly boundaries. The westerly boundary, is shown, in part, by the fixed lot lines of a CT Page 6273 proposed subdivision. The southerly boundary is, of course, marked by an electric company right of way. Whether the plaintiff understood the southerly line to be the centerline of the right of way or the southerly line (which again should be obvious with a deed description) is of minimal significance.
The defendant's next argument, that the three acre triangle piece to the south of the right of way was not shown on the first map and thus prevents enforcement of the contract, is also not persuasive. Mr. Hoerle was selling 36 plus or minus acres of land to the south of his other larger parcel. The testimony of David Whitney, his engineer, indicated that the subject parcel was only 32 1/2 acres (including the easterly four acre parcel which is not claimed by the plaintiff). The addition of the triangle piece still brings the total to under the 36 plus or minus acres.
The defendant's third claim is that as the second contract supersedes the first and as it is based on a non-existent map, the contract is obviously invalid.[1] The evidence, of course, indicated that it was the defendant who prepared and dictated the signing of the second contract. The purpose, however, was only to reflect the deletion of lot seven which had been previously sold. The testimony indicated no change to the subject parcel. The fact that parol evidence may be required on the issue of the map description or title does not mean that the contract violates the statute of frauds. Parol evidence is admissible "to explain an ambiguity in [an] instrument or "to show mistake." TIECommunication, Inc. v Kopp, 218 Conn. 281, 289 (1991).
The defendant's final arguments are also not sufficient to defeat a finding of probable cause. As the plaintiff never claimed an interest in the easterly four acres, this is not an issue. The fact that the entire parcel contains less than 36 acres is also not fatal as first, the contract indicated it was 36 plus or minus acres and second, the plaintiff is not objecting to the shortage. Finally, while the parties could not agree to a description, Mr. Hoerle, could have, as he has now done, commissioned a survey. (Exhibit 4).
The subject parcel, that is the piece of land easterly of the existing subdivision and southerly of the defendant's other land, does not change. In Montanaro, the contract was defective because the location of the house lot and six acres was never determined. There was simply no meeting of the minds as to just where the six acres were located. Such indefiniteness does not exist in this CT Page 6274 situation for any of the above reasons whether individually or in total.
3.
This court finally notes that very shortly after the second contract was signed — April or May 1993 — the defendant started the process to subdivide the subject parcel. This process continued while his attorneys were discussing the details of the closing with the plaintiff's attorneys. In May, 1993, a survey was prepared for the defendant showing a proposed subdivision. (Exhibit 4). It is substantially identical to the subdivision that the defendant prepared and received approval for in 1994. (Exhibit 5). The subdivision contains seven approved lots, and one unapproved lot. It also contains a 9.9 acre parcel of open space which includes the small triangular parcel to the south of the right of way. It is important to note that under the first agreement the total purchase price of $110,000 included two additional building lots. One, lot seven, was sold for $45,000 thereby reducing the purchase price of the second contract to $65,000. The second lot was also sold thus reducing the total due to $29,000 for the remaining acreage. If the selling price of the first two lots is any indication of the selling price of the seven lots, the defendant would receive substantially more than $29,000.
 III.
For the above reasons, this court finds that the plaintiff has met its burden of proof and has established that there is probable cause to sustain the validity of its claim. The application to discharge the lis pendens is, accordingly, denied.
Berger, J.