[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above-captioned case came before this court for a nonjury trial on the merits of the claims of four plaintiffs who allege that the City of Waterbury failed to make contributions on their behalf to an employee benefit plan after agreeing to do so. The plaintiffs, Barbara Place, Ivory Anders, Patricia Blue and Kathleen Maness allege that in July 1984, as members of the staff of the Waterbury Area Job Training Administration, they were given the option of withdrawing from the Waterbury municipal retirement plan and participating in a deferred compensation plan managed by Aetna Life Insurance and Annuity Company. They allege that the defendant City of Waterbury ("City") obligated itself to make contributions to this plan on their behalf and that after doing so between July 1984 and August 1987, it failed to make any contributions from August 1987 through July 1991. CT Page 6776
In their operative complaint, an amended complaint filed on January 8, 1998, the plaintiffs allege that the City acted as their fiduciary with regard to the deferred compensation plan. They allege breach of fiduciary duties (Count Two), breach of contract (Count Three), unjust enrichment (Count Four) and breach of a duty of good faith and fair dealing, apparently in connection with the alleged obligations of the contract (Count Five). In the first count of the complaint, the plaintiffs seek "an accounting and payment of all sums that the City wrongfully failed to make to the `Plan'" on their behalf.
In its second amended answer and special defenses, the City denied that the plaintiffs were City employees, denied that the City had a fiduciary duty with regard to the plaintiffs' participation in the alleged benefit plan, and denied that the City was required to make contributions to that plan on behalf of the plaintiffs. In its first special defense, the City pleaded that pursuant to Conn. Gen. Stat. § 52-557n(a) it is not liable for damages caused by criminal conduct, fraud or actual malice or willful misconduct by its officers, employees or agents. At oral argument, the defendant conceded that this defense is inapplicable to the breach of contract claim.
In its second special defense, the city pleaded that it is not liable for damages caused by reckless acts or omissions of its employees, officers and agents. In its third special defense, it pleads that pursuant to Conn. Gen. Stat. § 52-557n(b)(6) it is not liable for damages that were the result of actions of "someone other than an employee, officer or agent of said Defendant." The City pleads as a fourth special defense that the plaintiffs waived any claim against the City by opting to discontinue participation in the City's pension plan and participating in "the Aetna administered plan described in the complaint."
Finally, as a fifth special defense, the City alleged that the plaintiffs' claims are barred by "the applicable Statute(s) of Limitations, § 52-577 C.G.S. and § 52-581 C.G.S." The denial of the plaintiffs claim that they were City employees and the fifth special defense were added by an amendment proposed by a motion dated February 9, 2000, that was not claimed for adjudication until the first day of trial. The plaintiffs did not seek any postponement of the trial because of the granting of the defendant's motion for leave to amend its pleading; however, they sought and were granted additional time to file a brief addressed to the issues raised in the amended answer and special defenses. The plaintiffs filed their post-trial brief on May 23, 2000.
Findings
CT Page 6777
From 1987 through July 1991, the time period at issue, the plaintiffs worked at the office of the Waterbury Area Job Training Administration ("WAJTA"). At that time, WAJTA was an agency that provided training programs in a region that included not only the City of Waterbury but also other towns. The agency was funded under the federal Job Training Partnership Act, which created federally-assisted job training programs administered by the State of Connecticut and by regional councils made up of representatives from the business community and representatives from the governments of participating cities and towns. In their years of employment prior to 1984, the plaintiffs were enrolled in the municipal retirement plan of the City of Waterbury.
In June 1984, Ernest Mosley, who had become the executive director of WAJTA in 1983, advised WAJTA's staff, including the plaintiffs, that they had an option to remain in the municipal retirement plan, or become covered by the federal Social Security retirement plan through the payment of payroll taxes, or to join a deferred compensation plan. Mr. Mosley told the plaintiffs and the rest of the staff that the deferred compensation plan for each of them would be funded by their individual contributions from their salary and by contributions from "the employer." The plan was one offered by Aetna Life Insurance and Annuity Company. Though the plaintiffs testified they believed that the City of Waterbury would be the entity that would be making the contributions, no document concerning the deferred compensation plan explicitly states that the City of Waterbury, rather than WAJTA, would make such contributions. The ballots signed by the plaintiffs when they voted to select the Aetna plan state: "WITH REGARD TO RETIREMENT OPTIONS WHICH MAY BE AVAILABLE TO ME AS A WAJTA ADMINISTRATION EMPLOYEE, I VOTE AS FOLLOWS. . . ." The City of Waterbury was not mentioned on the ballot. The plan itself does not contain any provision concerning the source of contributions. The only officials who advised the plaintiffs about the deferred benefit plan were Mr. Mosley and his successor, Joseph Carrah. No representative of the City's personnel department or benefits office spoke to the plaintiffs about the plan. In his testimony, Mr. Mosley confirmed that "the employer" was to pay contributions; however, he did not specify, nor was he asked to specify, whether he meant that WAJTA would make contributions or whether the City of Waterbury would do so.
One of the plaintiffs, Kathleen Maness, testified that she had worked with the Fiscal Coordinator of WAJTA, John Bolinski, and at his direction had from time to time prepared vouchers to be sent to the City of Waterbury directing it to prepare checks from the WAJTA budget which WAJTA would then send to the deferred compensation plan for the various WAJTA employees. Ms. Maness stated that Mr. Bolinski instructed her as to the percentage of salary that was to be identified in each voucher and CT Page 6778 that he designated different percentages on different occasions. Ms. Maness testified that the contributions were paid from funds received by WAJTA in grants, and that the grant funds were held by the City and paid out in accordance with the vouchers issued by WAJTA's finance coordinator.
With a letter dated December 16, 1985, Mr. Bolinski sent Aetna a document listing contributions made on behalf of each WAJTA employee. That list was headed:
 JULY 1, 1985 TO SEPTEMBER 30, 1985 1ST QUARTER PROGRAM YEAR 1985 DEFERRED COMPENSATION CONTRIBUTIONS BY WAJTA TO INDIVIDUAL EMPLOYEE
(Exhibit 506.) The court finds it significant that the contributions were not identified as having been made by the City, but by the job training agency.
From time to time, WAJTA's director circulated to each of the plaintiffs reports from Aetna indicating the balance in their individual accounts in the Aetna plan. At some point, that practice stopped. The plaintiffs made inquiries to Joseph Carrah. On January 6, 1988, Mr. Carrah issued a memorandum to the staff of WAJTA in which he stated: "Please be advised that due to financial budgetary constraints, we are temporarily discontinuing agency matching funds for the deferred compensation plan. Based upon this, you may want to consider alternative retirement plans as we have discussed in the past . . ." It is notable that Mr. Carrah did not identify the City as in any way responsible for the cessation of contributions but identified the funds as "agency" matching funds.
Between August 1987 and July 1991, no payments were made to the Aetna fund, other than the contributions that the plaintiffs made themselves to their own accounts. None of the plaintiffs made any inquiry to the City's personnel or pension offices.
In July 1991, each of the plaintiffs was enrolled in the federal Social Security retirement plan.
The plaintiffs allege in their complaint that "at all pertinent times" they were "assigned to the entity created pursuant to the Job Training Partnership Act, 29 U.S.C. § 1511, et seq., consisting of the municipalities of Waterbury, Naugatuck, Prospect, Cheshire, Beacon Falls, Thomaston, Middlebury, Southbury, Woodbury, Oxford, Watertown and Wolcott." (Complaint, para. 3.) They also allege that, despite this CT Page 6779 assignment, they were employees of the City of Waterbury; and they assert that as their employer, the City is liable for the benefits that were part of their compensation for employment.
The plaintiffs' contractual claims depend on their proving that the City was their employer. The court finds that WAJTA was a regional agency and that no one of the cities and towns that made up its membership was the plaintiffs' employer.
In addition to the facts set forth above, the governance of WAJTA is indicative of its status as a separate regional entity rather than as a department or unit of the City of Waterbury. Mr. Mosley, the executive director of WAJTA in 1984, testified that he answered to a "PIC," a Private Industry Council. The federal Job Training Partnership Act, at 29 U.S.C. § 1512 and 1513, required the establishment of such a council, composed of representatives of private industry and of the member municipalities. The Act, at 29 U.S.C. § 1513 (e) empowers the private industry council to hire staff and prepare a budget for itself. The Act provides that the council may select an entity to administer the job training program for its region.[1]
This court finds that during the period at issue in this case, WAJTA was an agency created under the authority of the statutes cited above, and that it was not a department or agency of the City of Waterbury. The fact that the City issued payroll checks and kept employment records is consistent with the City having been designated as a member of the regional agency that would administer the assets of WAJTA, pursuant to 29 U.S.C. § 1513 (b)(1)(B). This conclusion is further supported by the fact that the purpose of WAJTA was to supply services to member cities and towns in the region, and not exclusively to the City of Waterbury.
Provisions of state law specifically recognize that municipalities are not obligated to include in their municipal pension plans any person employed in regional work force development agencies if that person "hold[s] a position funded in whole or in part by the federal government as part of any public service employment program . . ." Conn. Gen. Stat. § 7-425 (5). About seventeen months after WAJTA's administrators offered the staff the option of leaving the municipal retirement plan, Waterbury's board of aldermen voted to exclude from the City's retirement plan persons whose salaries were funded by federal grants. (Exhibit 507)
The plaintiffs assert that the designation of the City as the "owner" of the Aetna deferred compensation plan and other administrative details require the conclusion that the City was the party obligated to make contributions. This court is unconvinced. These facts are equally CT Page 6780 consistent with the federal statutory provision, cited above, that a member of a regional training program may be designated to administer the program.
The court also notes that the trial record includes as an exhibit a deferred compensation plan, Exhibit 6, which was not shown to bear any relation to the plaintiffs' claims. No objection was made to its admission, perhaps because it illustrated that the City was offering deferred benefit plans to its own employees.
Contract Claim
The plaintiffs' claims of breach of contract (Count Three) breach of the contractual duty of good faith and fair dealing (Count Five) and unjust enrichment (Count Four) fail unless the City had a contractual obligation to make the contributions claimed by the plaintiffs. The plaintiffs have provided no evidence of any express agreement by the City to do so; rather, they assert that WAJTA is a city agency and that the representations of its executive director were made on behalf of the City. Alternatively, they allege that the City is contractually obligated to provide contributions because the City is their employer.
This court finds that it has not been proven that Mr. Mosley had any authority to enter into any contract on behalf of the City with regard to contributions to be made on behalf of WAJTA's employees. He testified that the "employer" had agreed to make contributions, but he did not identify who "the employer" was, nor was he asked to do so when questioned by plaintiffs' counsel. While WAJTA may certainly have promised the plaintiffs that it would make contributions, the plaintiffs' claims are not against that entity but only against the City of Waterbury. The court finds that the City had no contract with the plaintiffs that required it to pay the contributions at issue and that it was not the plaintiffs' employer but only the entity charged with holding and paying out funds in accordance with the directions of WAJTA.
The plaintiffs have failed to prove their claims of breach of express or implied contracts in Counts Three, Four and Five of the complaint.
Claim of Breach of Fiduciary Duties
In the second count of their complaint, the plaintiffs allege that the City of Waterbury breached fiduciary duties that it had toward them with regard to contributions by their employer to the Aetna plan.
In order to prevail on this claim, the plaintiffs must establish that the defendant City in fact had assumed the duties of a fiduciary with CT Page 6781 regard to the employment benefit at issue and that it breached the obligations of a fiduciary. As the Supreme Court noted in Beverly HillsConcepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 57
(1998), a fiduciary duty springs not from a simple duty of care, but from a duty of loyalty to the party claiming the fiduciary relationship. A party claiming a fiduciary relationship must plead and prove that the party it characterizes as a fiduciary had a duty to represent his or her interests. Konover Development Corp. v. Zeller, 228 Conn. 206, 218
(1994).
It must be emphasized that the plaintiffs have not alleged any malfeasance by the City with regard to any money entrusted to it by the plaintiffs themselves. They make no claim that the City, as administrator, failed to direct to Aetna any of the amounts that the plaintiffs directed to be deferred by investment in the Aetna deferred compensation plan. The plaintiffs proved only that the City held the federal funds that comprised WAJTA's assets, and that it issued checks from these funds at the request of WAJTA officials. The plaintiffs did not prove that the City agreed, either explicitly or implicitly, to have any role with regard to the Aetna deferred compensation plan other than to issue the checks for contributions that WAJTA directed. A fiduciary relationship is one in which "there is a justifiable trust confided on one side and a resulting superiority and influence on the other." Dunhamv. Dunham, 204 Conn. 303, 320 (1987). Nothing in the evidence suggests that the City assumed a role of overseeing WAJTA's compliance with its contractual agreements with its employees or of protecting the interests of WAJTA's employees with regard to their receipt of promised contributions. By the terms of the statutes cited above, the City was designated to administer WAJTA's funds. The plaintiffs may have hoped that the City would oversee WAJTA's employment practices; however the term "justifiable trust," employed by the Supreme Court in Dunham v.Dunham, supra, suggests that there must be some basis for the expectation that a party will act on behalf of another. As the statutory administrator of WAJTA's funds, the City may have had a fiduciary relationship with WAJTA concerning the City's safeguarding of the funds, but it has not been shown to have a fiduciary relationship with the plaintiffs that required it to monitor WAJTA's compliance with its agreement to make contributions on behalf of its employees. The plaintiffs have not alleged that they entrusted any of their own money to the City, so their situation does not resemble the one found to give rise to a fiduciary relationship in Alaimo v. Royer, 188 Conn. 36, 40-41
(1982).
This court finds that the plaintiffs did not prove that the City had assumed a fiduciary relationship with regard to their employment benefits, and the plaintiffs have therefore failed to establish the CT Page 6782 required elements of their claim of breach of fiduciary duty.
Statute of Limitation Defense to Tort Claim
Even if the plaintiffs were somehow seen as having established that the City had a duty to act as a fiduciary on their behalf, the claim they make in the second count of the complaint is barred by the statute of limitation.
The plaintiffs commenced this action on February 22, 1996. The defendant has pleaded in its fifth special defense that the plaintiffs claim for breach of fiduciary duties is barred by the statute of limitation. The plaintiffs have not contested the defendant's position that the claim is subject to the three-year statute of limitations specified for tort claims in Conn. Gen. Stat. § 52-577. This is not a case in which a fiduciary is claimed to have concealed the existence of a cause of action. The plaintiffs received notice in January 1988, that their employer would no longer make contributions on their behalf to the Aetna plan. The plaintiffs failed to bring their tort claim within three years of the breach announced by the January 1988 notice or even within three years of any of the due dates for quarterly payments between that date and July 1991, when the plaintiffs agreed to liquidate their Aetna accounts and accept Social Security retirement plan coverage instead.
The claim for breach of fiduciary duty made in Count Two, even if proven, would be barred by the statute of limitation pleaded by the defendant, Conn. Gen. Stat. § 52-577.
Action for Accounting
The first count of the plaintiffs' complaint is an action for an accounting of the moneys contributed to the Aetna plan on their behalf. An action for accounting, available as an equitable remedy at common law and codified in Conn. Gen. Stat. § 52-401, et seq., exists to obtain a statement of the nature, value, and location of assets held by one entity on behalf of another. Zuch v. The Connecticut Bank Trust Co.,5 Conn. App. 457 (1985). The claim in this case is not that the City failed to account for funds it held on behalf of the plaintiffs. The plaintiffs have not proved that the City held any funds on their behalf. The City was the entity designated to hold and disburse WAJTA's fund in accordance with vouchers issued by authorized WAJTA officials; however there was no proof that the City held any fund that had been specifically designated as the property of any of the plaintiffs, as might have been the case if WAJTA had issued a voucher for payments to be made to the plaintiffs' accounts and if the City had failed to act in accordance with that direction. Instead, the court finds that WAJTA simply stopped CT Page 6783 directing that contributions be paid to the plaintiffs' deferred compensation accounts.
The plaintiffs have not proven a set of circumstances in which an order of an accounting would be appropriate relief. The court finds for the defendant on this claim.
Other special defenses
In view of the rulings set forth above, it is not necessary to reach the merits of the defendants' additional special defenses to claims that the court has found not to have been proven.
Conclusion
The plaintiffs failed to establish the elements of the claims they make in Counts One, Two, Three, Four and Five. The statute of limitation has expired on the claim they make in Count Two.
Judgment shall enter in favor of the defendant, which shall recover its statutory court costs upon filing a bill of costs with the Clerk of the Court.
 ___________________ Beverly J. Hodgson Date Judge the Superior Court